This is a special case stated under the 47th General Equity Rule for the construction of a contract of insurance between the appellant and the appellee in the following form:
"This certifies that Michael J. Goldstein, in the County of Prince George's, has this 28th day of February, 1911, made application to the Mutual Fire Insurance Company of Montgomery County for insurance upon the property specified in said application, to the amount of $915.00; that he has given his premium note for $534.00, and has paid upon the same $13.92 for interest and survey, and that there is insured upon the property specified in said application $915.00 from this date,and is in force until rejected by the company. Interest to January 1st, 1912, $13.92.
(Signed) SAMUEL R. NEAVE, Agent. Survey Mileage."
The application, in the form prescribed by the appellant for use, was filled out by Neave and signed by Goldstein, and the premium note, also in the form prescribed by the company, was filled out by Neave and signed by Goldstein, and both papers were delivered to Neave, who thereupon signed and delivered to Goldstein the above paper, the payment therein mentioned being made by Goldstein at the same time. Of the $915.00 of insurance, $500 was upon the dwelling house described in the application, which was destroyed by fire on March 9th, 1911, and it is agreed that the amount to be paid by defendant, if held liable at all, is $322.54, with interest from August 1st, 1911. At the time of making the application in this case Goldstein had two other policies of insurance on said dwelling, which was unknown either to Neave or the company, and the sole question the Court below was asked to determine, or which it did determine, was this: "Whether the existence of the said two *Page 85 
fire insurance policies * * * at the time of the making of the contract, did or did not vitiate the said contract of fire insurance?" The Court below decided the contract was not thereby vitiated, and the company has appealed from that decree.
It appears from the case stated "that the transaction between the plaintiff and Neave was in the usual course, the method of said company, through its agents, being to receive applications, and to deliver binding slips as aforesaid, each binding slip to be followed by a regular policy if the applicant's application is accepted," and it also appears that Neave transmitted to the company for its acceptance, the application, promissory note and cash paid as above described. No policy was actually issued until April 9th, 1911, when Policy No. 51831, a copy of which is set out in the record, was issued and mailed to the defendant, and the fourth term or condition of said printed policy provided that the same should be void "if the assured now has, or shall hereafter, or concurrently herewith, make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy, unless otherwise provided by agreement endorsed hereon, or added hereto in writing." The original charter of the company required it to keep a book containing a copy of the charter and of the Constitution and by-laws, and required all persons wishing to become members, to signify their assent thereto in writing at the foot of said copies, and the amended charter of 1890 provided that this assent might be given either in the book above mentioned or in any manner required by any by-law, theretofore or thereafter passed by the company, and by a subsequent by-law, it was provided that the signing of an application for insurance should be a constructive signing of the charter, constitution and by-laws, and have the same effect as a signing in said book.
In the application in this case, numerous questions were required to be answered by the applicant touching the title *Page 86 
and condition of the property, and other matters deemed material to the risk, but no inquiry whatever was made as to the existence of other insurance upon the property described. On April 26th, 1911, Mr. Magruder, counsel for Goldstein, notified the company that Goldstein had submitted to him the policy No. 51831, which he had received from the company, and "that said policy was not accepted in lieu of or as a substitute for the receipt signed by Mr. Samuel R. Neave, your agent, on February 28th, 1911, and delivered to Mr. Goldstein on that day."
It can not escape observation at the outset that the paper which in the case stated is called "a binding slip," purports toeffect present temporary insurance, and not merely anagreement for insurance to be effected thereafter. It states that "there is insured upon the property specified in saidapplication $915.00 from this date."
In Cyc., Vol. 19, page 594, it is said "an agent duly authorized to bind his company by contracts for insurance may make valid contracts by parol or by a binding slip or memorandum," and on page 595, "such binding slip or memorandum is evidence of a present contract of insurance between the parties, and the insurance takes effect and is in force from the time of delivery of binding receipt or memorandum to the person contracting for the insurance." The learned judge below very properly states that the ordinary binding slip "is an executory agreement to issue a policy in the form the insurer is accustomed to issue, and furnishes indemnity to the assured, pending action upon his application by the insurer, subject to the terms and conditions contained in such policy," but he observes with equal propriety that "it does not follow, because insurers are accustomed to issue executory contracts, that they cannot make executed contracts for temporary insurance. The quality of the contract can not be determined by its duration;" and, holding, as he did, that the plaintiff's application in this case, together with the certificate issued to him, formed an executed contract for *Page 87 
temporary insurance, he followed logically to his conclusion that the conditions of the policy issued and tendered, after the losshad occurred, could not be read into the executed contract. This view, based upon the peremptory language of this particular certificate, is so simple, and so fully in accord with settled legal principles governing the making and construction of contracts, that it does not seem that argument or authority is required for its acceptance. A case in point here however, isSmith Wallace Co. v. Prussian Nat. Ins. Co., 68 N.J.L. 674. A binding slip was issued by an agent whereby the company bound $2000 of insurance upon certain property, the binding slip to be void on delivery of the policy; no rate or amount was mentioned in the binder, but the insured understood the insurer proposed to charge a higher rate than it had charged for the same insurance a year before, and he requested the agent to endeavor to get some concession in the rate, which he consented to do, but before the attempt was made a loss occurred, and no policy was issued on the binder. The insured brought suit for the amount insured, and judgment was entered for the plaintiff from which the company appealed and the judgment was affirmed. The Court said: "The defendant in effect said to the plaintiff: `Upon your application we secure your insurance; we make a temporary contract of insurance by which we protect your property until we can agree upon the terms of the policy, which shall be a permanent contract expressing all the terms necessary to a complete contract.'" In that case the binding slip and application was silent as to the rate, and it was held the law implied a promise on the part of the insured to pay a reasonable rate, and that the insurer gave protection to the insured until the temporary contract was ended either by issuance and acceptance of a policy, or otherwise. In this case the binding slip and application were alike silent as to the existence of other insurance, and it was not competent to inject into the contract a term not incorporated in either the binder or the application. The principle *Page 88 
acted on there is applicable here. If no loss had occurred between the date of this executed contract for temporary insurance (that is insurance pending the rejection of the application) and the tender of the policy issued April 9th, 1911, it might be held, under the conceded power of the company to terminate a contract of insurance at its pleasure, that the tender of a policy containing this prohibition of other insurance, and its acceptance by Goldstein, would be to terminate the contract for temporary insurance, and substitute for it permanent insurance for the period named in the policy upon all the terms and conditions prescribed therein. But that situation is not before us. By issuing that contract of insurance, based upon an application that made no inquiry as to other insurance, prior or subsequent, the insurer induced the assured to rely upon the validity of that insurance until notified that the application was rejected, and it was too late after a loss had occurred, to reject the application, because that would have been to change the terms of present insurance without the consent of the insured. In Putnam v. Home Fire Ins. Co., 123 Mass. 325, plaintiff applied to defendant's local agent for insurance; the terms were agreed on and the agent made a memorandum to that effect on "his binding book," and the policy was not to issue until a special agent had approved the risk as it was extra hazardous. The memorandum was as follows:
"No. 447. Insurance is wanted by J.E. Putnam on Bldg. Bbl. Factory at 636 2nd St., South Boston, for $1,000, for 12 mos. from Aug. 17th, 1874. Binding in the Home Ins. Co. Hold for C.B. to inspect. Agent."
and subsequently at the foot of this memorandum was entered. Burned Sept. 5th. The Court held the agreement to be binding upon the company from the moment of the entry on the "Binding Book," and to continue in force at all events until the inspection by C.B., saying that "under such circumstances the plaintiff had a right to rely upon the memorandum *Page 89 
and for that reason might have failed to seek insurance elsewhere; and to the same effect is Brown v. Franklin Mut.Fire Ins. Co., 165 Mass. 565.
In Lipman v. Niagara F. Ins. Co., 121 N.Y. 455, a binding slip similar to that in this case, but containing none of the conditions usually found in insurance policies, was held to be not a mere agreement to insure, but a present insurance to the amount specified therein, though the slip was to be void upon delivery of a policy. The loss occurred at 3 P.M. but at 1 P.M. the defendant notified plaintiff's agents that they declined the risk, and the Court held that such notice terminated the temporary insurance. This case illustrates the rule both as to the inception and termination of a contract for temporary insurance; and to same effect see Salisbury v. Hekla Ins.Co., 32 Minn. 458.
This brings us to another question considered and determined by the Court below, viz., that even if the binding slip had been regarded by the Court as an executory agreement to issue a policyin the form the insurer was accustomed to issue, whether the condition relating to prior insurance had not been waived by the failure to make inquiry upon that matter, and we are of opinion that the best considered cases sustain the Court's conclusion that the condition as to other insurance was waived in this case.
In Fletcher v. Commonwealth Ins. Co., 18 Pick. 419, which was tried below before CHIEF JUSTICE SHAW, the plaintiff applied orally for insurance, and no written application was required or made, and no inquiries were made in relation to the property except as to its location on a certain road and the amount of the plaintiff's stock in trade. A loss having occurred, recovery was resisted on the ground that the house did not stand on land owned by the plaintiff, and that this fact was not communicated to defendant. In affirming a judgment for the plaintiff the Court said "The assured may well be silent as to various matters connected with or having some relation to the property insured without *Page 90 
any prejudice to his insurance, provided such silence was not intended to deceive or defraud the underwriter. * * * The fact withheld is that the plaintiff did not inform the defendants who owned the land on which the building stood. Now it seems to us very clear it was not necessary that he should. He stated everything truly, and it seems to us that if the defendants wanted any further information they should have requested it."
In Franklin Fire Ins. Co. v. Hewitt, Allison Co., 3 B. Monroe, 231, that eminent Court held that "Where insurers contract to deliver a policy covering a specific property, and a policy be delivered, though not formally accepted, variant from the contract, and loss occur within the insurance contracted for, a Court of Equity will grant relief to the insured according to the contract agreed on."
In Lorillard F. Ins. Co. v. McCulloh, 21 Ohio St. 176, the Court held that where a policy of insurance is issued upon a written application containing questions which are leftunanswered by the applicant, the underwriter waives the answers to such questions. That case is much stronger than the case at bar, since here no question was asked in the application as to other insurance.
In Dayton Ins. Co. v. Kelly, 24 Ohio St. 346, the written application for insurance was filled up by the company's agent and contained among other interrogatories, the following: "What amount is now insured on the property? In what offices (state particularly), and on whose account?" To this the applicant made no answer, and the company was held to have waived the answer.
In Clark v. Manufacturers Ins. Co., 8 Howard, 249, the Court said: "When representations are not asked or given, and with only this general knowledge, the insurer chooses to assume the risk he must in point of law, be deemed to do it at his peril." * * * It must be presumed the insurer has, in person or by his agent, in such a case, obtained all the information desired as to the premises insured, or ventured *Page 91 
to make the risk without it, and that the insured being asked nothing, has a right to presume that nothing on the risk is desired of him."
In Glenn Falls Ins. Co. v. Michael, 167 Ind. 659, the same doctrine is considered and applied.
The cases we have cited constitute a consistent line of decisions running from 3 B. Monroe, in 1836, to 167 Ind., in 1907. It is true that there is another line of cases, some of which deny the correctness of the views expressed in the cases we have cited, and others avoid those decisions by distinguishing them from the case then under consideration, but we think the weight of authority, as well as reason, sustains the conclusion of the Court below, and that it correctly summed up this branch of the case in saying "Having contracted, without asking for information, the defendant cannot be heard in a Court of conscience to say its contract is void because it did not have what he could have had for the asking."
Decree affirmed, with costs to the appellee above and below. *Page 92