# THE SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee, et al. *vs.* PETER FLAHERTY.

*Deeds—Restrictive Condition as to Use of the Property—Release of
Restriction by Grantor—Marketable Title.*

The Canton Company conveyed, in 1847, a tract of land to Gelston by a deed which contained the following restriction : The grantee for himself and all persons claiming under him agrees " that these presents are upon the express condition that no buildings shall be erected on the premises for the purpose of prosecuting any business, trade, calling or manufacture prohibited by the existing laws of the State of Maryland or the ordinances of the City of Baltimore, or which shall cause or produce a nuisance injurious or prejudicial to any of the adjacent lots, or calculated to prevent the beneficial use and occupation of the same, and that no such excepted business, trade, calling or manufacture shall be prosecuted or carried on within the premises unless the consent of the Canton Company shall first be had and obtained therefor, under penalty of rendering this indenture and all parts thereof void." The Canton Company subsequently conveyed other lots of ground in the same vicinity by deeds con-

taining no restriction.   The tract conveyed to Gelston was subdivided and came into the possession of different persons, to whom, in 1900, the Canton Company executed a deed of release or quitclaim of its title or right to enforce in any manner the above-mentioned restriction.   Defendant agreed to purchase a part of the Gelston tract, but refused to accept the same, alleging that he would be bound by the condition, and that the title of the vendor was not good and marketable.   *Held*,

1st. That since there is no evidence that the restriction in said deed was made in pursuance of a general plan for the improvement of the real estate, and similar restrictions were not imposed in the conveyances by the Canton Company of adjacent property, the grantees of other lots have no right to enforce the condition in the deed to Gelston.

2nd. That the restrictive condition could only have been enforced by the Canton Company and, since that company has released its right, the restriction is no longer binding on the property.

Appeal from a *pro forma* order of the Circuit Court No. 2, of Baltimore City.

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*W. Calvin Chesnut* (with whom were *Gans & Haman* on the brief ), for the appellants.

The condition prohibits the use of the property for purposes that are criminal or for businesses, etc., which would create a nuisance.   It is suggested that this is no real restriction, and certainly none that prevents the owner of the property from exercising thereon any privileges or liberties that he would be permitted to have had the condition not been imposed.   No one can complain that he has not the unhampered use of property, when the only restriction is that he is not at liberty to use it in violation of law. Likewise, every owner takes property subject to the operation of the maxim, " *sic utere tuo ut non alienum lædas.*" No owner has any right to make a nuisance of his property.   The word nuisance as herein used should be construed in its accepted legal meaning.   It would, otherwise, in this case, be expanding a cause of forfeiture, which equity

never does.  In *Harrison* v. *Good*, L. R.  11  Eq.  338, it
was decided that the word " nuisance " as used in a restrict-
ive covenant should receive its well-known legal acceptation.
"Nuisance" is not so broad a word as "annoyance" or
"grievance."    See also *Tod Heatly* v. *Benham*, L. R.  40
Ch.  Div., p.  80 ; *Wanton* v. *Coppard* (1899), Ch.  92 ;  68
L. J. Ch.  8.    Furthermore, restrictive covenants and con-
ditions should always be construed in favor of the freedom
of the property.  *Peabody Heights Co.* v. *Willson*, 82 Md.
203.

In *Hutchinson* v. *Ulrich*, 146 Ill.  342, the Court said :
"In this country real estate is an article of commerce, the
uses to which it should be devoted are constantly changing
as the business of the country increases, and as its new
wants are developed ; hence it is contrary to the well-rec-
ognized policy of the country to tie up real estate where
the fee is conveyed, with restrictions and prohibitions as to
its use, and hence, in the construction of deeds containing
restrictions and prohibitions as to the use of property by a
grantee, all doubts should, as a general rule, be resolved
in favor of a free use of property and against restrictions."
See also *Clark* v. *Jammes*, 87 Hun. (N. Y.) 215.    In view
of these considerations it is submitted that this condition,
which does not prohibit anything specific and is vague and
general in the extreme, never did constitute any real restric-
tion upon the property and should not be extended in force
after more than fifty years from its creation.

But if this contention is not concurred in, and this Court
should be of the opinion that this condition did create a
substantial incumbrance upon the title to this property, it
becomes material to inquire for whose benefit this condition
was inserted in the deed from the Canton Company to
Hugh Gelston.    For if the condition was imposed for the
individual benefit of the grantor, the Canton Company,
then the release thereof by said company entirely removes
all objections to the title to this property based upon the
alleged restriction created by this condition, which was the

only objection raised by the purchaser Flaherty. If, however, the condition was imposed for the benefit of the adjoining lots, then the appellee contends that the release from the Canton Company was not effective to remove his objections to the title.

*The proposition of the appellants is that this condition was imposed solely for the benefit of the Canton Company, to enable it more advantageously to deal with its property.* The law bearing upon the subject of restrictive covenants and conditions affecting real estate has been very fully considered by this Court in *Summers* v. *Beeler,* 90 Md. 474; *Peabody Heights Co.* v. *Willson,* 82 Md. 186; *Newbold* v. *Peabody Heights Co.,* 70 Md. 493; *Halle* v. *Newbold,* 69 Md. 265; *Thruston* v. *Minke,* 32 Md. 487. From these and the numerous English and American cases reviewed therein there has been established the principle that, whether the restriction inserted in the deed by the grantor was imposed for his own benefit and protection, or for the benefit of other and adjoining lots, and the common benefit of other grantees of the original grantor, and for the benefit of sub-grantees of the original grantee, is purely a question of intention, to be determined generally by the fair interpretation of the deed containing the restriction, aided if necessary by reference to the situation of the property and the surrounding circumstances. See also *Worthington Brick and Tile Co.* v. *Butler,* 15 Q. B. Div. 268; *In re Birmingham and District Land Co.,* 1 Ch. (1893) 342; *Mulligan* v. *Jordan,* 50 N. J. Eq. 364; *DeGray* v. *Monmouth Beach Club House Co.,* 50 N. J. Eq. 329, 335–6; *Renals* v. *Cowlishaw,* 9 Ch. Div. 129, affirmed on appeal, 11 Ch. Div. 866.

It is very evident that the Canton Company inserted this condition in order that it could *control the situation,* and make the most of all its property in the neighborhood. The company as a large land-owner, as it still is to this day, was looking out for its own interests. If the construction of the appellee is correct, that is, that the condition

was inserted only for the benefit of the adjacent lots, then when the company sold those lots, the benefit of the condition followed the lots, and the company parted with its control over the Gelston lot.    Surely this was not the intention of the Canton Company.    The subsequent history of the property in the neighborhood fortifies the construction that this condition was for the personal benefit of the Canton Company and not for that of adjoining lots or assigns of the Canton Company.

In the following cases restrictions in deeds have been held to be for the benefit of the grantors only : *Master* v. *Hansard*, 4 Ch. Div. 718 ; *Keats* v. *Lyon*, L. R. 4 Ch. 218; *Equitable Society* v. *Brennan*, 145 N. Y. 661.

The language of the condition when construed in connection with the surrounding circumstances shows conclusively that the benefit of the condition was solely for the Canton Company, for the following reasons :    (1.) The restriction is in the form of a condition, violation of which would defeat the deed, thus resulting to the benefit of the grantor, the Canton Company.    (2.) The agreement of the grantee to observe the terms of the condition is expressed to be with Canton Company, not the Canton Company and its assigns. (3.) The operation of the condition was subject to be defeated at the will of the Canton Company.    (4.) There was no mutuality of restriction in the condition.    (5.) There was no general building scheme.

The proviso contained in the Canton Company's deed of release is nugatory, and the deed completely destroys the condition and frees the title to the property sold to Flaherty from any restriction.    That the Canton Company could not possibly be under obligations to anyone to enforce this condition for his benefit is clearly seen by reference to the above cited cases of *Master* v. *Hansard*, 4 Ch. Div. 718; and *Keates* v. *Lyon*, L. R. 4 Ch. 218.    See also *Everett* v. *Remington*, [1892] 3 Ch. 148, which is very similar to the case at bar. Even were the decision in the *Peabody Heights case* 82 Md. 186, applicable here, there can be no doubt that the

request of all these sub-lotholders, followed by the release from the Canton Company, has completely destroyed the existence of the condition so far as they are concerned, and they have therefore voluntarily surrendered any benefit that might have been vested in them by the existence of the condition. *Jewell* v. *Lee*, 14 Allen, 145; *Dana* v. *Wentworth*, 111 Mass. 291; *Schreiber* v. *Creed*, 10 Sim. 9.

*Joseph C. Mullin* (with whom was *Michael A. Mullin* on the brief), for the appellee.

1. By the covenant in question the property is encumbered by serious burdens and obligations, which, except for the covenant, had no existence, because: (*a.*) By the terms of the covenant the restricted uses are such as are "prohibited by the *existing* laws of the State of Maryland or the ordinances of the city of Baltimore." *Non constat* that methods of user and enjoyment which were illegal in 1847 are illegal to-day, or will be illegal for all times. Therefore, if the property is to-day used for a purpose which is perfectly lawful, but which is contrary to the provisions of a law or ordinance in force in 1847, the covenant is enforceable in all its rigor, even though the law or ordinance has for many years been repealed. This is not an interpretation taken from the accidental use of a word or expression, for the intention of the grantor was evidently to prevent the user of the land for undesirable purposes that at the date of the deed were clearly defined, *i. e.*, by the existing law, and not to trust to the uncertainty of the action of future law-makers. (*b.*) Even though it is argued that the prohibition extends only to unlawful uses, yet it must be remembered that by the terms of the deed the offending property-holder would suffer not only the statutory penalties for an unlawful act, but would also expose himself and his property to the penalty of the covenant, an additional and distinct burden, which is not imposed by law, but which exists only by force of the deed. Moreover, the criminal law acts *in personam*, whereas the covenant is operative *in rem*, and its burden is accordingly an incumbrance.

2. The restriction is enforceable by the grantees of other lots. The land in the same block, or in the neighborhood belonging to the Canton Company at the date of the deed and retained by it, occupies the position of the hotel property in *Thurston* v. *Minke*, 32 Md. 487, of the lots retained on Fulton avenue, in *Halle* v. *Newbold*, 69 Md. 265, and, what is a closer parallel, of the 400-foot block in the *Peabody Heights cases*, 70 Md. 493; 82 Md. 186. In other words, the land retained by the company in the Essex street block and in the neighborhood is the land for whose benefit the covenants were made, that is, it is the dominant tenement. It follows as a corollary that the land conveyed by the deed is the land whereon rests the burden of the restrictions—that is, it is the servient tenement. The question as to what part of the land retained by the company may enjoy the enforcement of the restrictions, may be qualified by the use in the covenant of the word *"adjacent;"* but it is not necessary here to define that expression, because, if the restriction exists for the benefit of any of the land retained, it is an encumbrance on that sold and renders the title bad and unmarketable. It does not matter that in the deed here under consideration, the covenant is not expressly made for the benefit of the covenantee and its *assigns.* For in the case of *Clarke* v. *Martin*, 49 Pa. St. 289, (quoted with approval in *Thurston* v. *Minke, supra,* and cited in *Halle* v. *Newbold, supra,*) the suit was brought by the assignee of the original grantor's devisee, although the provision is not expressly for the grantor and his *assigns.* Nor does it matter that the restrictive provisions here is in the form of a condition. For when that point was urged in *Clarke* v. *Martin,* just cited, it was distinctly held that that fact could not prevent the equitable remedy of injunction there sought.

3. The right to enforce a restrictive covenant is not a personal right, but is a right reserved for the benefit of the land, and hence must be used with reference thereto. *Clarke* v. *Martin*, 49 Pa. St. 289. Therefore, if this right is controlled or qualified by a right to waive the restrictions, the

latter also must be used with reference to the land and for its benefit. Now, the right to enforce a restrictive covenant is an easement on the land granted in favor of the land retained. *Halle* v. *Newbold*, 69 Md. 270; *Summers* v. *Beeler*, 90 Md. 474.

If the right to enforce the covenant is an easement, the right to qualify or waive that enforcement is also an easement. And the Canton Company being possessed of the latter easement, not as a personal right, but for the benefit of the land ·retained, holds the same as trustee for the use of the owners of the land entitled to enforce the restrictions. For there may be " a trust in an easement in the lands in the same manner as in the freehold of the land itself." *Washburn on Easements*, 513. And the Canton Company, holding the right of waiver in trust, must exercise the right for the benefit of its *cestuis que trustent, i. e.*, the owners of the land entitled to the enforcement of the restrictions, and would be acting in violation of its trust if it attempted by a single act to cancel the easement.

But, irrespective of the nature of this right of waiver, the deed of March 13th, 1900, can only be operative on one theory, viz.: that the right of waiver was created only for the Canton Company's own benefit, as distinguished from the benefit of its assigns of the land retained in 1847. For the deed of release is executed by the Canton Company alone, and by the Canton Company, "only as a release of the right of said Canton Company, to enforce said agreement or restriction for its own benefit, if any," and the company expressly refrains from acting "as trustee or otherwise for the benefit of others, in whose behalf and at whose instance said Canton Company is, may or shall be under obligations, legal or equitable, to enforce said rights in said agreement or restriction." In other words, the company only attempts to release the restrictions so far as the same are for its own peculiar and personal benefit. There is no pretense of a release in the name of its assigns, the present owners of the land entitled to enforce the restrictions. Therefore, the

covenants only stand released, if at all, on the theory that they were reserved for the personal benefit of the original grantor—a theory which is untenable and which "common sense forbids." *Clarke* v. *Martin*, 49 Pa. St. 289.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal is from an order sustaining the exceptions filed by the appellee to the ratification of a sale made to him, by the appellant as trustee, of two lots of ground in Baltimore City. The exceptions are based upon the claim that the title to the lots has been rendered unmarketable by certain alleged restrictive covenants or conditions as to their use contained in a deed made in April, 1847, of the land of which they form part, from the Canton Company to Hugh Gelston.

The obnoxious clause in the deed to Gelston is as follows : " And the said party of the second part, for his heirs, executors, administrators and all persons claiming under him or them hereby agrees with the Canton Company of Baltimore aforesaid that these presents are upon the express condition that no buildings shall be erected on the premises aforesaid, for the purpose of prosecuting any business, trade, calling or manufacture prohibited by the existing laws of the State of Maryland, or the ordinances of the city of Baltimore, aforesaid, or which shall cause or produce a nuisance injurious or prejudicial to any of the adjacent lots or calculated to prevent the beneficial use and occupation of the same, and that no such excepted business, trade, calling or manufacture shall be prosecuted or carried on within the premises aforesaid, unless the consent of the aforesaid, the Canton Company of Baltimore, shall first be had and obtained therefor, on penalty of rendering this indenture and all parts thereof void."

At the date of the deed to Gelston the Canton Company owned considerable ground in the neighborhood, including that immediately adjoining the parcel sold to him. It subsequently sold or leased to other persons all of the land

belonging to it in the same block with the Gelston lot without inserting in the conveyances therefor any restrictive clause similar to the one contained in the deed to him.

Gelston's lot was subdivided by him and came to be owned in separate parcels under *mesne* conveyances by a number of persons, all of whom in January, 1900, united in a written request to the Canton Company to release the land from the restrictions imposed upon it by the deed to Gelston in 1847. The Canton Company thereupon executed and delivered to them a deed of release and quitclaim on behalf of itself, its successors and assigns of all its title to the land and its right to rely upon or in any manner enforce the restrictions contained in the deed to Gelston; but this release expressly disclaimed any purpose to affect or impair the rights, if any there were, of other persons to whom the Canton Company might be held to be under obligations as trustee or otherwise to enforce the restrictions.

The question for us to determine is whether in the present state of the title the restriction in the Gelston deed of 1847 imposes upon the lots sold to the appellee such conditions or limitations as to prevent the trustees from conveying them to him by a good and marketable title.

Inasmuch as the Canton Company has, in the most formal manner, released all of its interest in the lots and all right on its part to enforce the restriction, the issue before us is narrowed down to the inquiry whether any other person possesses the right to enforce it. Of course no one who is a total stranger to the title has any such right. If the right exists at all, it must exist in favor of some one claiming under the Canton Company, which was the grantor in the deed to Gelston.

By the premises of that deed an absolute and unqualified estate in fee in the land is conveyed to Gelston, and it is in the *habendum* alone that the restrictive clause appears. The restriction, which only prohibits unlawful uses of the property, is in terms made in favor of the grantor alone, no mention being made of its successors or assigns, and the

clause in effect provides that the land may be applied to the prohibited uses with the assent of the grantor. The only persons, other than the parties to the deed, in any manner referred to in connection with the restriction are the owners of adjacent lots and there is no reservation in their favor, and they are but incidentally mentioned in defining the prohib-ited uses of the property. The deed contains no covenant on the part of the grantor to hold the remainder of the land subject to the same restrictions or to exact similar con-ditions from the purchasers thereof.

Looking then to the contents of the deed itself there is nothing approaching a clear intent manifested on the part of the parties to it to confer upon any other persons the right to enforce the restrictions which it attempted to put upon the use of the land conveyed by it

In a number of cases, where, altho 'gh the covenant or condition in a deed imposing restrictions upon the use of the property thereby conveyed was expressed in such terms as to be binding by way of contract only upon the parties to the deed, it has been held that " in order to carry out the plain intent of the parties, it will be construed as creating a right or interest in the nature of an easement to the remaining land of the grantor and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land." *Whit-ney* v. *Union R. R.*, 11 Gray, 359. This principle has been recognized and *Whitney's case* cited in support of it in *Thurston* v. *Minke*, 32 Md. 494; *Halle* v. *Newbold*, 69 Md. 270, and *Summers* v. *Beeler*, 90 Md. 474.

But this proposition has been held by high authority to be "confined to cases where there is proof of a general plan or scheme for the improvement of property and its consequent benefit, and the covenant had been entered into as part of a general plan to be exacted from all purchasers and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or scheme and the covenant has entered into the consideration of his

purchase." *Mulligan* v. *Jordan,* 50 N. J. Eq. 364 and cases there cited.

The case of *Mulligan* v. *Jordan,* was cited with approval by this Court in the opinion in *Summers* v. *Beeler, supra,* and we think it correctly states the law.

In the present case there is a total absence of proof of the existence of any general plan or scheme for the improvement of the land of which the lot sold to Gelston formed a part, as there is a complete absence from the deed of any undertaking on the part of the grantor to subject the adjacent lands which were then owned by him to similar restrictions and thus secure to his grantees that mutuality of benefit which lies at the basis of their right to enforce the restrictions *inter sese.*

Neither a fair interpretation of the language of the Gelston deed nor any evidence appearing in the record would justify us in holding that it conferred upon any other persons than the grantor the right to enforce the restrictions contained therein.

As the grantor has released its right to enforce the restrictions, we hold that they are no longer binding on the property. The exceptions of the appellee should be overruled and he be required to comply with the terms of his purchase.

> *Order appealed from reversed and case remanded for further proceedings in accordance with this opinion.*

(Decided June 15th, 1900.)