# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 26, 1914.

ADAM L. ALBRIGHT, ET AL.,
VS.
THEODORE CAVACOS.

Robert H. Carr, Richard B. Tippett and George W. Lindsay for plaintiffs.

Wm. R. Dorsey and Wm. P. Lyons for defendant.

324

AMBLER, J.—

It is admitted that the defendant's lot at the southeast corner of Roland avenue, formerly Central avenue, and 36th street, formerly Third avenue, as well as all of the lots belonging to the several plaintiffs on the east side of Roland avenue south of 36th street, formed part of the property of the Hampden Association, which was in 1859 the subject of a proceeding in equity in the case of John W. McJilton et al. vs. Sarah A. Mankin et al., in the Circuit Court for Baltimore County. By the decree in that case trustees were appointed to sell and convey the land "in accordance with the constitution and by-laws of the Hampden Association," which was as yet unincorporated, and from the proceeding it clearly appears that there was a general "building scheme" or plan for the development of the entire property of the Association, consisting of a tract of some four hundred and fifty acres, designed to make it more attractive for residential purposes. A plat shows how the streets were laid off and the land divided up into building lots, and the constitution and by-laws provided, among other restrictions, that every building should be set back, on Roland avenue, at least twenty feet from the street line. and on 36th street at least fifteen feet from the street line. The deeds from the trustees, under which all parties to the present controversy claim by mesne conveyances, contained no express covenants or considerations on the part of the grantees, and none of the subsequent deeds has mentioned or referred to any "restrictions."

In September, 1913, the defendant bought the property at the southeast corner of these two streets, fronting about one hundred and thirty-four feet on 36th street and running back, with even width, one hundred and twenty-five feet on Roland avenue to a thirty-foot alley. The parties are not agreed as to the exact width of this alley, but they do agree that the near-est house of any of the plaintiffs is about a hundred and eighty feet south of the corner of the two streets. Following the street car lines, the tide of business came up 36th street, and on that street, as in some other parts of Hampden, residences were converted into stores and were extended to the street line. Apparently, with the change of conditions, the fifteen-foot restrictions was, by common consent, disregarded and abandoned. At the time of the defendant's purchase, the front of his building had already stood for several years directly on the line of 36th street, but along the Roland avenue side was a twenty-foot strip of bare ground, unenclosed, unpaved and not even covered with grass. He now proposes to utilize some of this vacant space by erecting at the corner a one-story structure with a front of twenty feet on 36th street and running south thirty-five feet on the line of Roland avenue. This new building, he says, will give him, in place of the empty lot, a valuable corner store that will be in keeping with the other improvements on 36th street, and, so far from injuring any of the plaintiffs, the nearest of whom will be at least a hundred and forty feet from the rear wall, it will be a decided improvement to the whole neighborhood, especially as his plans include paving the sidewalk. He also says that what he proposes at his corner has already been done at each of the other three corners of the two streets, without objection from any one so far as he has heard. For more than twenty years J. P. Benson & Sons, who are among the plaintiffs in this case, have had a substantial brick building at the northeast corner, flush with the street line in both directions. Six or eight years ago the defendant himself put a like brick building at the southwest corner, also, flush with the lines of both streets; and for about fifteen years a one-story frame building, used for offices, has occupied a similar position at the northeast corner, with a high fence in the rear running about a hundred feet on the line of the east side of Roland avenue. Above 36th street buildings stand on the line in several instances on both sides of Roland avenue, and that appears to have been the rule with all houses built in the last five or ten years. Notwithstanding the defendant's denial, I cannot doubt that he made his purchase

with notice of the restriction; but there seems to have been at least some ground for the advice that he admits having received from his counsel, to the effect that he had "99 *per cent.* of the right to build out to the street line *because other people were doing it.*"

I cannot accept the view of the defendant's counsel that under the decision of the Court of Appeals in Dawson vs. W. M. R. R., 107 Md. 75, none of the present owners of property in Hampden are entitled to enforce the restriction, because in the original deeds from the trustees there was no covenant or condition in favor of the grantor's successors and assigns and expressly binding the heirs and assigns of the grantees.

It has long been the settled law of Maryland, as of other States and also of England, that, although a covenant or agreement may not be, strictly speaking, such as to "run with the land," it will in equity be enforced against a grantee with notice (Peabody Heights Co. vs. Wilson, 82 Md. 186); and also that "although the covenant or agreement in the deed, regarded as a contract merely is binding only on the original parties, yet in order to carry out the plain intent of the parties, it will be construed as creating a right or interest, in the nature of an easement appurtenant to the remaining land of the grantor at the time of the grant, and the right and burden thus created will respectively pass to, and be binding on, all subsequent grantees of the respective lots of land" (Summers vs. Beeler, 90 Md. 474; Safe Deposit Co. vs. Flaherty, 91 Md. 489). The most familiar application of this principle is in cases where there is proof of a general plan or scheme for the improvement of property. (See note to Korn vs. Campbell, 37 L. R. A. (N. S.) 1, and particularly at p. 27); and that it was again distinctly recognized and approved by the Court of Appeals in Dawson vs. W. M. R. R. (107 Md. 75) is shown by the reference at the close of the opinion (see bottom of page 95) to cases where "there were peculiar grounds for equitable jurisdiction in behalf of those not parties to the deeds or other instruments" and especially to Safe Deposit Co. vs. Flaherty (91 Md. 499-500) as explaining under what circumstances "those not parties to a deed or contract may have the benefit of provision in it." If the

Messrs. Benson, who have not only built to the line at the northwest corner of Roland avenue and 36th street, but have also built to the west line of Elm avenue, immediately in the rear of their lots on the east side of Roland avenue, were the only plaintiffs in this suit, a Court of Equity might well refuse to enforce in their favor a restriction which they have not hesitated to disregard themselves whenever that served their own convenience or advantage; but there are other plaintiffs who ask only that the defendant may be required to observe the same rule that has governed them in the improvement of their property. The latter justly say that because the restriction has elsewhere been abandoned by common consent is no reason why an abandonment should be forced upon the residents of this neighborhood against their will; and with equal justice they insist that some sanctity is still due to solemn deeds and covenants even after the lapse of fifty years. No Court has yet held that, without the consent of all concerned, a formal agreement can be set aside merely because it has become inconvenient or even burdensome to some of the parties whom it affects; and while it is true, as the defendant urges, that a writ of injunction is not a matter of absolute right but, like a decree for specific performance, rests in the sound discretion of the Chancellor upon careful consideration of all the facts and circumstances of the particular case (McDowell vs. Biddison, 120 Md. 118; Maryland Tel. Co. vs. Simon's Sons Co., 103 Md. 136); still that does not mean that in every case the question whether or not the writ should issue is to be determined by a nice balancing of the relative loss or gain to the respective parties. If the proposed structure would cause any real injury to the plaintiffs, they are entitled to an injunction even though their damage would be inconsiderable in comparison with the advantage that would accrue to the defendant from a corner store in the center of the business district.

Roland avenue is not graded or curbed below 36th street, but at that point descends rather abruptly for a distance of fifty or a hundred feet and then continues on a gentle incline until it terminates in a deep gully about eight hundred feet south of 36th street. The present building at the southeast

326

corner of Roland avenue and 36th street is a plain brick structure, three or four stories in height, called "Hampden Hall," and appears, as might be inferred from its name, to have been designed for a sort of town hall. This building originally fronted on Roland avenue, but as has already been stated, the first floor has been converted into stores fronting on 36th street and now extended to the street line. Between Hampden Hall and the thirty-foot alley above mentioned are two small frame cottages, each standing back twenty feet from the line of the street with an enclosed front yard extending to what is called the sidewalk, but this "sidewalk" from 36th street to the alley is bare ground, neither paved nor boarded.

Running south from the alley is a practically continuous row of two-story houses, set back uniformly twenty feet from the street line, with neat little yards running out to the sidewalk, which is paved with brick from the alley to the gully that closes the street. The house at the corner of the alley is a combined store and dwelling. The rest of the houses are small, but comfortable looking houses. The third in the row is the northernmost one belonging to any of the plaintiffs, and the fact that the owners of the two houses nearest the alley not only declined to join the plaintiffs, but appeared as witnesses for the defendant, is significant. If, as they testified, the proposed structure will not interfere with their light or air or even obstruct the view from their premises, it is not easy to see how it could in any way injuriously affect any of the plaintiffs. Indeed, the plaintiffs themselves seem to appreciate this difficulty; for while they lay some stress on the objection that, with the defendant's building extended to the street line, the view from their yards will be obstructed in a measure and they will no longer be able from their second-story windows to catch sight of a car coming south on Roland avenue from 37th street, their main objection is that this building may prove an "entering wedge" that will smooth the way for further encroachment. Neither objection appears to be very substantial.

The plaintiffs claim that the block on the east side of Roland avenue south of 36th street is in itself a separate and distinct neighborhood, and that

their right to the maintenance of the restriction on the faith of which they built or bought their homes cannot be affected by anything that has been done or permitted in other neighborhoods, whether on the opposite side of Roland avenue or on either side of 36th street or on Elm avenue. If that be a sound proposition—and I am inclined to think that it is—the thirty-foot alley affects almost as complete a cleavage as does 36th street, and the block south of the alley is now entirely uniform, which cannot be said of the two divisions above and below the alley. The defendant's proposed structure would conform strictly with the other buildings on 36th street, while a similar structure at the southeast corner of the alley would be a distinct innovation, entirely out of keeping with the rest of the block. Moreover, it appears from an exhibit offered by the plaintiffs themselves that all of the owners of property south of the alley have additional protection in a recent agreement that prohibits the erection there of any building within twenty feet of the street line, and the fact that this agreement was considered necessary and makes no mention of or reference to the previous restriction seems to indicate that, by common consent of the then owners, the old restriction was regarded as obsolete and abandoned.

The tract of land that fifty years ago was laid off for handsome suburban residences has to a large extent become a compactly built portion of the city. The lots are now measured by the square foot instead of the broad acre and regulations and restrictions, once wise and proper, have lost much of their meaning and force. The owner of a modest little house is unquestionably as much entitled to the protection of the Courts as the proprietor of a lordly mansion. Sometimes, indeed, he has a stronger claim to such protection; for usually his means of self-defense are less and therefore his need is greater; but in this instance, I think, the threatened danger is fanciful rather than real.

In view of the conditions that exist in that locality, I can not think that the proposed structure at the corner of the two streets will work any appreciable injury or inconvenience to any of the plaintiffs, and for that reason I will sign a decree refusing the injunction and dismissing the bill.