# JOHN J. RINGGOLD

### vs.

# ELIZABETH M. DENHARDT ET AL.

*Building Restrictions—Garage as Outbuilding—Enforcement by Heirs or Assigns—General Plan of Improvement.*

A covenant or condition that no building shall be erected "other than that now erected, this condition to include and embrace" certain named classes of buildings "or any outbuildings of whatsoever description," includes a garage sought to be erected as an adjunct to a dwelling house.　　p. 139

A grantee whose conveyance is in terms "subject to the restrictions and conditions in" the deed to his grantor is charged with notice of such restrictions and conditions.　　p. 140

In the absence, both of language in terms conferring the benefit of a restrictive covenant upon the heirs or assigns of the original covenantee, and of evidence that the covenant was part of a general plan of improvement, the heirs or assigns are not entitled to assert such covenant.　　pp. 143-148

That a deed reads "with a view of maintaining the present high standard of the surrounding ground of which the aforegoing lot is a part, it is agreed that this deed is made upon the following conditions and covenants," reciting them, is not sufficient to show that such conditions and covenants are inserted as a part of a general plan of improvement.　　p. 146

Evidence that the vendor of a lot subject to restrictions sold neighboring lots without restrictions, and considered herself entitled to do the same as regards others, combined with a lack of evidence that any purchaser understood that the restrictions were to be inserted in deeds other than his own, was sufficient to show the absence of any general plan of improvement.　　p. 147

There must be something in the deed or other instrument, or some positive act done, to show an understanding that the sales are all to be made subject to the restrictions, in order to enable the purchasers to enforce them *inter sese*.　　p. 148

*Decided February 20th, 1920.*

Appeal from the Circuit Court of Baltimore City (Gor-
ter, J.).

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Urner and Stockbridge, JJ.

*T. Scott Offutt,* with whom was *H. C. Jenifer* on the brief,
for the appellant.

*W. Herdman Schwatke* and *C. Morris Harrison,* for the
appellees.

Boyd, C. J., delivered the opinion of the Court.

The appellant filed a bill to enjoin the appellees from
erecting a private garage upon the property conveyed by
Louisa A. Ringgold to Elizabeth M. Denhardt and by the
latter to Gertrude Erck, in what was formerly in Baltimore
County, but is now in the city. The lower Court granted a
preliminary injunction, but subsequently passed a decree dis-
solving it and dismissing the bill. From that decree this
appeal was taken.

Mrs. Ringgold owned what was known as "Spring Hill,"
consisting of about thirteen and one-half acres of land which
bounded on the Old York Road and Arlington Avenue. Some
years ago (at one place in the record it was said to be four-
teen years, and at another seventeen), through her son, the
appellant, she had most of it laid out into lots and streets,
one street running northerly and southerly being called Rose
Avenue, another running easterly and westerly, called
Spring Hill Terrace, and still another partly open to the
east of Rose Avenue. A plat was made which was not placed
on record, but was offered in evidence. Thirty houses were
built on lots by Mrs. Ringgold, eighteen of which were sold
to various parties and twelve are still owned by the appellant,

to whom the property was either conveyed or devised by his mother. In answer to the question, "Did you acquire any title to the lots yourself on which these houses were built or any of them?" he replied, "Oh, yes; from time to time the houses and lots were deeded to me." The part of the Spring Hill property which Mrs. Ringgold still owned at her death she devised to him. He owns a number of unimproved lots, ground rents on some improved lots and a parcel of ground having, according to the plat, a frontage of 550 feet on Spring Hill Terrace, with a depth of 200 feet, bounded on the west by Rose Avenue and on the east by the other street on the plat. On that are the dwellings of the appellant and some outbuildings.

The deeds for all of the property sold, excepting what was conveyed to the Most Reverend James Cardinal Gibbons, Roman Catholic Archbishop of Baltimore, contained conditions and covenants similar to this one, dated November 30, 1904, from Louisa A. Ringgold to Elizabeth M. Denhardt, one of the appellees. That deed describes the property as bounding on the south side of Arlington Avenue 55 feet 7 inches and calls for a street to be laid out, which is Rose Avenue, and runs with that 156 feet and 3 inches. It was upon that lot that the garage was proposed to be built, facing towards Rose Avenue. After describing the lot by courses and distances, the deed continues:

"Being part of the same lot of ground described in a deed dated the 18th day of March, 1863, * * * to the said Louisa A. Ringgold, and with a view of maintaining the present high standard of the surrounding ground of which the foregoing lot is a part, it is agreed that this deed is made upon the following conditions and covenants."

As only the first, second and fourth are material, we will omit the others. They are as follows:

"I. That no other building is to be made, erected, placed or put upon or on the aforesaid lot other than

that now erected, this condition to include and embrace
all stables, chicken or pigeon coops, pigsties, privies,
or any outbuildings of whatsoever description.    II.
That no fence other than an open wire fence or a
hedge not higher than three feet shall be erected on
said lot * * *    IV. That the house on said lot now
erected shall be used only as a dwelling house, and the
same shall not be given, sold, rented or subleased to a
negro or person of African or Mongolian descent."

The one directly involved in this case is the first, but the
fourth shows that, in speaking in the first of the building
"now erected," the dwelling house on the lot was meant. As
the garage about to be erected was not a dwelling house, there
would seem to be no doubt about it being embraced in the
first restriction. "No building other than that now erected"
would have been sufficient, but it says what the condition is
to include and embrace; namely, "all stables, chicken or
pigeon coops, pigsties, privies, *or any outbuildings of what-
soever description."* It would be difficult to use more com-
prehensive language for the purpose of prohibiting the erec-
tion of any building not then on the lot. A garage is a build-
ing "other than that now erected," and it is an outbuilding
of some description. Without quoting from them, the fol-
lowing authorities are sufficient to show that a garage would
be included in this restriction, and that a Court of Equity
would be authorized to give relief by injunction against the
erection of one, if the complainant was entitled to the bene-
fit of the restriction. 2 *R. C. L.* 1209; *Riverbank Improve-
ment Co.* v. *Bancroft,* 209 Mass. 217, 95 N. E. 216, Ann.
Cas. 1912 B, 450, and note; 34 *L. R. A.* (N. S.) 730, and
note; *Berry, Restrictions on the Use of Real Property,* 141-2,
Sec. 99; *Hepburn* v. *Long,* 146 N. Y. App. Div. 527, 131
N. Y. Supp. 154 (1911); *Sayles* v. *Hall,* 210 Mass. 281,
96 N. E. 712, Ann. Cas. 1912 D, 475, and note under head
of Garage on page 480.

It, therefore, is clear that the learned Judge who decided the case below was right when he said: "I think this restriction is broad enough in its language to cover the garage," but he dissolved the injunction on other grounds. There can be no doubt about Mrs. Erck having notice of the restrictions, as the deed to Mrs. Denhardt by Mrs. Ringgold is referred to and the property is conveyed to Mrs. Erck "subject to the restrictions and conditions in said deed recited." Mrs. Denhardt reserved the right "to make sale or dispose of any or all of said property above described by deed or other instruments of writing in any manner she may see fit as long as she lives and from, and immediately after her death, if said property remains undisposed of, to said grantee, her heirs and assigns." Both of them are made parties to the bill, as are the Morrow Brothers, who were contractors to erect the garage.

As reflecting upon the scheme of development of the property (as he speaks of it) intended by Mrs. Ringgold and her agent, the plaintiff, we will quote some of his evidence on that subject: "Q. And in this bill of complaint that you filed in this case you refer to a general scheme of development of the Springhill property? A. Yes. Q. What was the general scheme? A. The idea was to have the rears of the property as attractive and as pretty as the front, and to have an unobstructed view through the rears and no alleyways, and no place to collect garbage or anything of that kind, and just with a four-foot hedge, so that people could look over the whole thing, and that was one of the great things about the development, the unobstructed view. Q. As the houses were built there, was that the original idea of the development? When you decided to develop the property was that the original scheme? A. That was the original scheme and carried out in every instance." He further testified that there had never been any departure from that scheme; that they (meaning his mother through him) built every house on the place and followed the general scheme outlined by him; that, as

shown above, they built thirty houses—eighteen of which they had sold and he owned the remaining twelve; that the houses are uniform in their construction and are for the most part about twenty-eight feet front by thirty-five feet deep, besides porches of ten feet; that only one building (the dwelling) is on each lot that is improved and all of the houses are north of Spring Hill Terrace, excepting those on the Catholic Church property, and those on the plaintiff's home place, which includes more than half of the development south of Spring Hill Terrace, and is not laid out into lots. The latter is higher than Spring Hill Terrace. The lots average about fifty feet front and about one hundred and fifty feet deep. According to the plat there are also four lots south of Spring Hill Terrace to the west of Rose Avenue and four to the east of the street not named, on which no houses have been erected. The houses are all frame, and cost from $2,000 to $3,000 each.

The leading case in this State on the general subject is *Thruston* v. *Minke,* 32 Md. 487. There, a lease for the term of ninety-nine years was made, by one part-owner of a hotel property to the other owner, of an adjoining unimproved lot, with certain restrictions as to the building to be erected on the demised premises, reserved for the benefit of the hotel property. It was held that it was not a covenant running with the land demised, but the effect of the condition was to create a right or interest in the nature of an incorporeal hereditament or easement, appurtenant to the hotel property, and arising out of the land demised, and that the lessor was entitled to the benefit of the condition in the lease, which did not pass to his assignee of the reversion, as was contended by the defendant. The cases of *Whitney* v. *Union R. Co.,* 11 Gray, 359, and *Clark* v. *Martin,* 49 Pa. 289, were referred to at length, and relied on. In *Halle* v. *Newbold,* 69 Md. 265, the grantors imposed a restriction in the nature of a servitude or easement upon the land they retained. In *Newbold* v. *Peabody Heights Co.,* 70 Md. 493, JUDGE ALVEY

said, in speaking of *Thruston* v. *Minke* and *Halle* v. *Newbold,* that "in both of those cases the general principle of equity was acted on and fully adopted, that a restrictive covenant entered into between a vendor and vendee, or lessor and lessee, in respect to the manner of using the property, would be enforced by a court of equity, as against the vendee or lessee, and his assigns, without respect to the question as to whether the covenant did or did not, in a legal sense, run with the land. The relief may be furnished either by way of injunction, or upon application for specific performance, according to the circumstances of the case calling for the exercise of equitable jurisdiction." It must not be overlooked, however, that *Thruston* v. *Minke* was between the original parties and in *Halle* v. *Newbold* the covenant was by express words for the heirs and assigns. After quoting at length from the opinion of LORD CHANCELLOR COTTENHAM in *Tulk* v. *Moxhay,* 2 Phill. 774 (in which the instrument expressly included the assigns), he said: "The principle thus clearly stated has been applied in a great variety of cases of restrictive covenants and agreements, both in the English and American courts; and they all concur in holding that whoever purchases land upon which a former vendor or lessor has imposed an easement, charge, or restriction in the manner of its use, such as would be enforced by a court of equity as against his vendee or lessee, the party purchasing the land with notice will take it subject to such easement, charge or restriction, however created."

That is repeated in *Wood* v. *Stehrer,* 119 Md. 143, and after citing *Peabody Heights Co.* v. *Willson,* 82 Md. 186; *Summers* v. *Beeler,* 90 Md. 474; *Safe Deposit Co.* v. *Flaherty,* 91 Md. 489; *Dawson* v. *West. Md. R. R. Co.,* 107 Md. 70, and *Foreman* v. *Sadler's Executors,* 114 Md. 574, it was said: "It will be seen from an examination of those cases that a vendor may impose restrictions on lands he sells for the benefit of his remaining land in such manner as may be binding on the vendee and his assigns, although they are

not what are strictly covenants running with the land, and the vendor may likewise impose burdens upon his remaining land for the benefit of that sold so that his heirs and assigns may be bound by the restrictions." It is also said in that case that "There are a number of cases in this State which determine that if it is intended to bind heirs and assigns by such instrument it must be so stated, or at least there must be enough in the instrument to show that such was the intention"—citing *Halle* v. *Newbold, supra, Ross* v. *McGee,* 98 Md. 389, *Dawson* v. *West. Md. R. R. Co.,* 107 Md. 70, *Md. & Pa. R. R Co.* v. *Silver,* 110 Md. 510. In *Ross* v. *McGee,* JUDGE FOWLER repeated the quotation from *Whitney* v. *Union R. Co.* made in *Halle* v. *Newbold,* that "when it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of the other land owned by the grantor, and originally forming with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land." That was referred to with approval in *Washburn on Easements* (4th Ed.) 115, 116. In *Summers* v. *Beeler,* JUDGE PEARCE quoted with approval from *Nottingham Brick & Tile Co.* v. *Butler,* 15 Q. B. Div. 268, that "where the same vendor, selling to several persons plots of land, parts of a larger property, exacts from each of them covenants imposing restrictions upon the use of the plots sold, without putting himself under any corresponding obligation, it is a question of fact whether the restrictions are merely matters of agreement between the vendor himself and his vendees, imposed for his own benefit and protection, or are meant by him, and are understood by the buyers, to be for the common advantage of the several purchasers. If the re-

strictive covenants are simply for the benefit of the vendor, purchasers of other plots of land from the vendor cannot claim to take advantage of them. If they are meant for the common advantage of a set of purchasers, such purchasers and their assigns may enforce them *inter sese* for their own benefit." On appeal LORD ESHER said that JUSTICE WILLS was perfectly correct, and that "the question whether it is intended (that) each of the purchasers shall be liable, in respect of those restrictive covenants to each of the other purchasers, is a question of fact to be determined by the intention of the vendor and of the purchasers, and that question must be determined upon the same rules of evidence as any other question of intention." In *Dawson* v. *Western Md. R. R. Co.* it was held that the easement in question did not pass to the appellants who were assigns of Rowland, the original grantor. In referring to the cases relied on by the appellants the Court said that they were either brought by the original parties, such as in *Lynn* v. *Mt. Savage Iron Co.,* 34 Md. 603, or the deeds or instruments under consideration expressly included the assigns, such as *Tulk* v. *Moxhay, Whitney* v. *Union R. Co., Clark* v. *Martin, Halle* v. *Newbold,* or there were peculiar grounds for equitable jurisdiction on behalf of those not parties to the deeds or other instruments, such as *Newbold* v. *Peabody Heights Co., Safe Deposit Co.* v. *Flaherty.*

Inasmuch as this bill was filed against the original grantee, who still has an interest in the property, and her grantee, who took the property with a provision in the deed that it was subject to the restrictions and conditions in the deed to her grantor, it may be conceded that Mrs. Ringgold would have been entitled to relief if she was still living and owned the property her son now owns. The question then is whether the restrictions and conditions can be enforced by him in a court of equity. It will be observed that this deed did not refer to the heirs and assigns of either grantor or grantee,

and Sec. 11 of Art. 21 of the Code does not apply. *Ross* v. *McGee, supra.* In *Halle* v. *Newbold,* on page 270 of 69 Md., the Court, after referring to *Thruston* v. *Minke, Whitney* v. *Union R. Co., and Clark* v. *Martin,* said the cases conclusively settled the law that a grantor may impose a restriction, in the nature of a servitude or easement, upon the land he sells or leases for the benefit of the land he still retains," "and *if that servitude is imposed upon the heirs and assigns of the grantee, and in favor of the heirs and assigns of the grantor,* it may be enforced by the assignee of the grantor against the assignee (with notice) of the grantee." The Court based its decision in that case on the fact that the heirs of Caroline Donaldson created that easement or servitude on their own lands, binding by express words their heirs and assigns in favor of the land then owned by Thomas Donaldson, and by equally express words made the servitude attach to his heirs and assigns. That quotation is repeated in *Summers* v. *Beeler, Ross* v. *McGee, Dawson* v. *Western Md. R. R. Co.,* and *Wood* v. *Stehrer.* In *Dawson* v. *Western Md. R. R. Co.* we added: "The implication is that unless it is so imposed, it cannot be enforced by the assignee." In *Newbold* v. *Peabody Heights Co.* the covenant in the agreement of the 19th of October was very explicit, that a preceding agreement with the memorandum attached "should be binding upon the parties *and their assigns."* The latter words were italicized by Judge Alvey. That is also referred to in *Peabody Heights Co.* v. *Willson.*

The appellant cannot, therefore, claim the right to relief on the ground that the deed *in terms* gave him such right, *as assignee* of his mother. But while that is always important, if not conclusive, evidence of the intention of the parties, that restrictive covenants were not for the benefit of the grantor alone, there may be other evidence reflecting upon it. As was said in *Wood* v. *Stehrer,* on page 148 of 119 Md., "it does not necessarily follow that because a vendor

has imposed restrictions on a lot sold by him, his adjoining land is to be subject to the same restrictions, or that because he binds himself personally by covenants in reference to restrictions that they are to follow the land and bind his heirs and assigns. As was pointed out in *Summers* v. *Beeler,* the question is one 'of fact to be determined by the intention of the vendor and of the purchasers, and that question must be determined upon the same rules of evidence as other questions of intention.' " In this case there is nothing whatever in the deed to the effect that the remaining lands of the vendor, or any other lots sold, are to be subject to the same restrictions as those named in this deed, except in so far as that may be implied from what we have quoted above—"with a view of maintaining the present high standard of the surrounding ground of which the aforegoing lot is a part, it is agreed that this deed is made upon the following conditions and covenants." It does not provide that the grantor will use, or hold the remainder of the property subject to those restrictions. In the lease of November 15, 1905, to the appellant, after stating that no other building is to be erected, etc., there is inserted, "unless the same is destroyed by fire, when a building of the same description can be built thereon." It may be that that could be done without qualifying the restriction, but just why it was left out of this deed is not shown. At the time this and other deeds were made the vendor had, and the appellant still has, outbuildings on the home place, which is a part of Spring Hill and is on the plat, although not laid out in lots. The plat was not even recorded, and there is nothing on it to indicate that the lots were to be sold subject to those or other restrictions. The vendor did convey to the Catholic Church a parcel of land, which included four lots which were laid out on the plat, without any restrictions in the deed. The appellant undertook to explain that as follows: "Why, it was a different portion. They cut that property off by Spring Hill Terrace and that is facing

right on the Old York Road, in the southwest corner of it, and it was not supposed that any restriction could be put on church property in regard to the building of a school or parsonage." That may be true, but if it was intended that all of the lots laid off, even if we omit the home place, were to be subject to the restrictions, the property ought not to have been sold to any purchaser who could not comply with them. Mr. Ringgold was asked: "Now, as a matter of fact, was not it originally intended by you that the property now called the church lot, as well as lot B and D, to the extreme rear or eastward end of the development, should be part of the development?" and he made this significant reply: *"We had it plotted out. We could not tell you what we were going to do. Many changes are made in a plat."* If the vendor had the right to sell off lots without imposing restrictions, and to make changes in the plat as she saw proper, it cannot be said that it was the intention of the parties that her remaining property was to be subject to the restrictions. There are on the church lot a large hall and schoolhouse and a church and parsonage already built or to be built. The appellant seems to think that he could do as he chose on the property south of Spring Hill Terrace, but there were twelve lots, in addition to his own place, and two streets laid out on the plat south of Spring Hill Terrace. He was asked: "In other words, if you want to you can develop this other property south of the Spring Hill Terrace subject to these restrictions, and if you do not want to you do not have to?" and replied, "That is it." There is nothing in the record to show that the purchasers of lots entered into any arrangement by which these restrictions were to be binding on lots north of that street, but not on those south of it—indeed there is nothing to prove that the purchasers understood that the restrictions were to be inserted in any deed other than their own respective ones.

The "scheme of development" spoken of by the appellant falls far short of what this Court has held to be sufficient.

In *Summers* v. *Beeler*, JUDGE PEARCE referred at length to *Mulligan* v. *Jordan*, 50 N. J. Eq. 363, 24 At. 543. After quoting from *Whitney* v. *Union R. Co.* what had been quoted and approved in 69 Md. 270, as to the right of purchasers of lots from a common grantor, whose deeds contained restrictive covenants, conditions or restrictions, to enforce them *inter sese*, he said: "But, as is well expressed in *Mulligan* v. *Jordan*, *supra*, 'the right of grantees from a common grantor to enforce *inter sese* covenants entered into by each with said grantor, is confined to cases where there is proof of a general plan or scheme for the improvement of property, and its consequent benefit, and the covenant has been entered into as part of a general plan to be exacted from all purchasers, and to be for the benefit of each purchaser, and the party has bought with reference to such general plan or scheme, *and the covenant has entered into the consideration of his purchase.'* In that case the Court proceeded to say 'the only fact which appears is, that the same covenant is incorporated in the deeds of the complainant and defendant, and that Mr. Roberts has inserted the same covenant in each deed he made conveying any portion of the property. This has been held not sufficient evidence of the covenant having been entered into for the benefit of other lands conveyed by the same grantor,' citing in support of the position *Jewell* v. *Lee*, 14 Allen, 145; *Sharp* v. *Ropes*, 110 Mass. 381; *Keates* v. *Lyon*, 4 Ch. App. 218; *Renals* v. *Cowlishaw*, 11 Ch. Div. 866." See also as to the last statement note to *Rogers* v. *Hosegood* (1900) 2 Ch. 388; 7 *Am. & Eng. Dec. in Eq.* 280, where a number of other cases are cited in support of it. There must be something in the deed or other instrument, or some positive act done, to show an understanding that such sales are all to be made subject to the restrictions, in order to enable the purchasers to enforce them *inter sese*. The case of *Nottingham Brick & Tile Co.* v. *Butler*, 15 Q. B. Div. 268, is a good illustration of what acts are sufficient. There the lots were sold at public auction and the conditions of sale were

publicly announced. Sometimes a plat recorded or made shows the restrictions, or an agreement showing them as to all the lots may be recorded. What is inserted in this deed not only fails to show such "a general plan or scheme for the improvement of the property," as is required by *Mulligan* v. *Jordan*, and adopted by this Court, by what it says, but what it omits to say is even more significant.

In *Safe Deposit Co.* v. *Flaherty*, Judge Schmucker referred to the fact that "the deed contains no covenant on the part of the grantor to hold the remainder of the land subject to the same restrictions or to exact similar conditions from the purchasers thereof." The opinion in that case refers to the class of cases to which *Whitney* v. *Union R. Co.* belongs, and quotes with approval from *Mulligan* v. *Jordan* what we have quoted above, to show what is necessary to be proven in order to bring sales within that class of cases. In *Foreman* v. *Sadler's Executors*, Judge Burke again quoted from *Mulligan* v. *Jordan* what has been quoted above, and the rule announced by Justice Parker in *Elliston* v. *Reacher* (1908), 2 Ch. D. 374, as to the enforcement of restrictive covenants by purchasers *inter sese*. In *Lowes* v. *Carter*, 124 Md. 678, Judge Urner reviewed many of the decisions of this Court on the subject. He quoted from *Wood* v. *Stehrer* that "if it is intended to bind heirs and assigns by such restrictions, it must be so stated, or at least there must be enough in the instrument to show that such was the intention," and added, "and because the covenant in that instance did not refer to the heirs and assigns of the grantors, or provide that they should 'use or hold the remainder of the property subject to the same restrictions imposed on the lot conveyed,' it was held to be a mere personal agreement of the grantors which was not enforceable against other proprietors."

We are of the opinion that there is not enough shown in this record to enable the appellant to enforce the agreement, either on the ground that he was a purchaser of some lots with restrictions in the deeds in the lifetime of his mother,

or that he is the present owner of the remaining property under his mother's will, and hence we will affirm the decree, but without discussing the reason given by the learned judge below. We realize the importance of having restrictions in deeds in many instances, and the right to enforce them, but if it is intended to bind, or benefit, heirs and assigns by such restrictions it is so easy to say so, or to clearly show such intention, that there is no reason why it should be assumed, in the absence of something more than we have in this case. As was said in *Wood* v. *Stehrer*: "If it was so intended, it would have been easy to have so framed the covenant that the restrictions would have attached to the remaining land of the grantors, or to have covenanted for their heirs and assigns, as the grantee did in the covenant he entered into."

The exceptions to testimony do not seem to have been pressed and at any rate none of them would affect the conclusion reached by us.

*Decree affirmed, the appellant to pay the costs.*