## WILLIAM U. G. CLEM *v.* ELLSWORTH C. VALENTINE ET AL.

[No. 1, January Term, 1928.]

*Decided April 5th, 1928.*

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Milton G. Urner, Jr.,* with whom was *Leo Weinberg* on the brief, for the appellant.

DIGGES, J., delivered the opinion of the Court.

Rocky Ridge is a small village located in Frederick County, Maryland, containing about twenty buildings and one hundred inhabitants. There are two main roads or highways passing through the village, one leading from Emmitsburg southwardly through Rocky Ridge and on to Creagerstown, the other leading eastwardly from Thurmont through Graceham and Rocky Ridge to Detour. In 1921 Ellsworth C. Valentine, Dessie M. Valentine and Margaret L. Shorb were the owners of a lot of ground located at the northeast corner formed by the intersection of the two roads mentioned above, containing one acre and twelve perches, more or less, and Ellsworth C. Valentine and Dessie M. Valentine, his wife, were the owners of a lot located at the northwest corner, containing one acre. For the purposes of this opinion the property on the northeast corner will be called the Clem lot, and the one on the northwest corner the Thompson lot. The evidence shows that there had been located on each of these properties buildings which were used for mercantile purposes; the Clem lot having been so used for a number of years, and being so used by Ellsworth C. Valentine at the time it was sold to Clem on April 14th, 1921; while the store-house which formerly stood on the Thompson lot was burned some time about 1912 and was not rebuilt or occupied for store purposes until Valentine erected a dwelling house and store upon the property, the construction thereof being completed some time in February, 1921. It is further disclosed that the fair market value of the Clem lot in April, 1921, without any restrictions, was from $1,500 to $1,800; that on April 14th, 1921, the then owners of the Clem lot sold it to William U. G. Clem for $1,100,

the reduced price being on account of a restrictive covenant as to the use of the property, agreed upon between the parties and incorporated in the deed to Clem. This covenant is contained in the habendum clause of the deed and reads as follows: "To have and to hold the above described land and premises unto himself, the said William U. G. Clem, his heirs and assigns, subject to the restrictions hereinafter mentioned. And the said grantee does hereby covenant and agree 'that he will not use the property and premises aforesaid for the purpose of conducting therein or thereon a general merchandise store or business and that no building to be erected on said land shall be used otherwise than as a private dwelling house or garage. In the event the said grantee violates the aforesaid covenant, then he shall forfeit all right and title in and to the premises and the said property shall revert to the said grantors, their heirs and assigns. The aforegoing covenant shall apply and bind the grantee, his heirs and assigns."

Just prior to this conveyance Valentine vacated the property sold to Clem, and occupied the dwelling-house and storehouse erected by him upon the Thompson lot. From the time he moved into the property on the Thompson lot Valentine or his lessee conducted a general mercantile business thereon until the portion of this lot, upon which the dwelling-house and store was located, was sold to Grace L. Thompson on March 7th, 1927. During the period from April 14th, 1921, to March 7th, 1927, the appellant Clem did not attempt to conduct any mercantile business upon the property bought from Valentine, but strictly observed and lived up to the restrictive covenant contained in his deed. By deed dated March 7th, 1927, Ellsworth C. Valentine and wife conveyed that portion of the lot located on the northwest corner, on which the dwelling and store house was located, to Grace L. Thompson, reserving to themselves, however, a portion of said one acre, fronting sixty feet on the Emmitsburg road, and containing a piece of land of that width running the full depth of the one acre lot. Mrs. Thompson purchased her lot

for the purpose of conducting a mercantile business thereon, and, at the time she purchased it, was told by Valentine, or his agent for the sale thereof, that there was a restrictive covenant in Valentine's deed to Clem which precluded that property from being used for a mercantile business. Upon her purchase, she continued the mercantile business formerly conducted by Valentine or his lessee, and shortly thereafter the appellant rented or leased his property to Robert Valentine, a nephew of Ellsworth C. Valentine, who proceeded to establish and conduct a mercantile business upon the Clem property. Thereupon the original grantors to Clem, and Grace L. Thompson and her husband, the appellees herein, filed a bill in the Circuit Court for Frederick County praying that the appellant be restrained from conducting a general merchandise business on the property purchased from Valentine and others. The bill alleged the facts hereinbefore set forth, and further, that the restrictions in the deed to Clem were placed there by the grantors for the benefit of the remaining property of Valentine and wife, two of the grantors, and were so understood by the appellant, the property being conveyed to the appellant for a considerably less sum than the market value of the property without any restriction; that the appellant accepted the same with the full understanding of the purpose of the restriction contained in the deed, and that he was obtaining it for a smaller sum because of the restriction; that the appellant acknowledged the force and effect of the restriction by refraining from conducting any general mercantile business on his property from the date of the delivery of his deed until the breach set out as above, which occurred after the purchase by Mrs. Thompson of the Thompson lot. There was a demurrer filed to the bill of complaint, which was overruled, with leave to answer. The appellant then answered, and testimony was taken in open court. Subsequently the chancellor passed an order directing that the injunction issue as prayed in the bill of complaint. The case comes here on appeal from this order.

The appellant urges a number of objections against the enforcement of the restrictive covenant, among which are,

that it is against public policy, in that it creates a monopoly, that it is repugnant to the fee simple estate created, and that it is perpetual in its operation. We do not deem it necessary to discuss at length these objections, for the reason that we find, upon well settled principles of law, they are without force. There is clearly no monopoly created which the law strikes down as being against public policy, because the restriction only applies to a very small area, and then only restricts the conduct of one particular business therein. It is not repugnant to the fee simple estate created by the granting clause of the deed, unless the habendum divests the estate granted and substitutes another, which it is apparent the restriction here does not do. *Marden v. Leimbach,* 115 Md. 206. Neither does it create a perpetuity, such as the law condemns, because the restriction can be removed by a release of the parties interested in its enforcement at any time. We have been referred to no authority holding that a restriction, such as here considered, is void as creating a perpetuity, and we have been unable to find any. Restrictions upon the use of property granted in fee, without express limitation as to the time for the operation of the restriction, have been universally sustained.

We come now to what, in our opinion, is the real question to be decided, and that is, can Mrs. Thompson, a subsequent grantee of land retained by Valentine at the time Valentine sold the lot to Clem with the restrictive covenant, enforce the provisions of that covenant against Clem? Or, in other words, can one who was not a party to the instrument containing the restrictive covenant, but who subsequently became the grantee of the covenantee, enforce the restrictive provisions for his benefit? This question depends upon whether or not the covenant contained in the deed from Valentine to Clem was designed for the purpose of benefiting the land retained by Valentine, or whether it was a personal covenant inuring solely to the benefit of the grantors in the deed to Clem. If it was a personal covenant, of course, Mrs. Thompson could derive no benefit therefrom, there being no privity of contract

between her and Clem.; but if it created an equity inuring to the benefit of the land, or to the person standing in the position of owner of the land, then a court of equity will enforce the restriction in favor of any subsequent grantee of Valentine against Clem, or any assignee of his, having actual or constructive notice of the provisions of the restrictive covenant. Whether a person not a party to a restrictive covenant has a right to enforce it, therefore, depends upon whether the covenant was made for the benefit or advantage of the land retained by the covenantee, and at the time of the suit owned by the complainant; and this question is determined largely by the intention of the parties in imposing the restriction. It is incumbent upon the complainant to show that this was the intention of the original grantor. *Hays v. St. Paul M. E. Church,* 196 Ill. 633, 63 N. E. 1040. In order to make this rule applicable, it must appear from the terms of the grant, or from the situation of the parties and the surrounding circumstances, that it was the intention of the grantor, when inserting the restriction, to create a servitude, right, or equity, which would inure to the benefit of the complainant's land, and equitably should be annexed to it as an appurtenance. *Beals v. Case,* 138 Mass. 138; *Hooper v. Loltman* (Tex. Civ. App.), 171 S. W. 270; 21 *A. L. R.* 1281, and cases there cited.

It must be borne in mind that the action to enforce agreements imposing restrictions on the use of property, by persons not parties thereto, is equitable, and governed by the rules applicable to that kind of action; and the jurisdiction of courts of equity in this class of cases is not confined by the limitations, nor is it founded upon the principles, of the action of covenant in courts of law. *Brouwer v. Jones,* 23 Barb. (N. Y.) 153. In the case of *Coughlin v. Barker,* 46 Mo. App. 54, the court said: "The question whether the covenant runs with the land seems to be material in equity only on the question of notice; if the covenant runs with the land, then it binds the owner of the land, whether he had knowledge of it or not; for he takes no greater title than his predecessor had to convey. But if the covenant does not run

with the land, but the land is subject to what is sometimes called an 'equity,' and at other times a 'negative easement,' in favor of the adjoining land, then, in order to enforce this easement against the land, it is essential that the owner should have taken the land with notice of it." "Whether it was a covenant running with the land, or a collateral covenant, or a covenant in gross, or whether an action at law could be sustained upon it, is not material as affecting the jurisdiction of a court of equity, or the right of the owners of the dominant tenement to relief upon a disturbance of the easements." *Columbia College v. Lynch,* 70 N. Y. 440.

It seems to be well settled by the weight of authority that any grantee of the land to which such a right is appurtenant acquires by his grant a right to have the servitude, or easement, or right of amenity, protected in equity, notwithstanding that his right may not rest on the covenant, which simply runs with the title to his land, and notwithstanding that it may also be true that he may not be able to maintain an action at law for the vindication of his right. Nor is it necessary, in order to sustain the action, that there should be privity of estate or contract, but there must be found somewhere the clear intent to establish the restriction for the benefit of the party attempting to restrain its infringement. In 21 *A. L. R.* 1285, it is stated: "It has been said that it is a principle upon which all the courts unite, that the right to equitable relief in these cases depends upon the following considerations: First. A precedent agreement in some form by which a restriction is imposed upon the lot owned or held by the defendant, for the benefit of the lot owned or held by the plaintiff. Second. In case the agreement is made by the defendant's predecessor in title, notice in some form to the defendant of the fact and nature of the agreement, either from the language of the title deed under which he holds, or otherwise."

In *Halle v. Newbold,* 69 Md. 265, Judge Stone, speaking for the court, after referring to the cases of *Clark v. Martin,* 49 Pa. St. 289; *Thruston v. Minke,* 32 Md. 487; and *Whitney v. R. R. Co.,* 11 Gray (Mass.), 359, said: "These cases

very conclusively settle the law that the grantor may impose a restriction, in the nature of a servitude or easement, upon the land that he sells or leases, for the benefit of the land he still retains; and if that servitude is imposed upon the heirs and assigns of the grantee, and in favor of the heirs and assigns of the grantor, it may be enforced by the assignee of the grantor against the assignee (with notice) of the grantee." It is to be noted that that case was one in which the covenant expressly provided that its terms should be binding on the assigns of both the covenantor and the covenantee, and it was there held that this enabled an assignee of the covenantee to enforce the restriction; but it does not decide that a covenant which does not, in terms, make it apply to the assignee of the covenantee, could not be enforced by such grantee, if it be clearly shown that the covenant was made for the benefit of the land owned by him, and created a right or equity appurtenant thereto. In the one case the language of the covenant itself was all that was necessary to show the intention of the parties, but it does not follow that this intention cannot be shown otherwise. In *Clark v. Martin, supra,* it was said: "It was objected at the argument that this remedy applies only as a means of compelling an observance of the terms involved in a general plan of lots, and this element actually exists in about half of the cases just cited; yet they are not decided on that consideration. It is not because a plan is deranged that the court interferes, but because rights are invaded, or about to be; and this fact may exist in a plan of two lots as well as in one of two hundred. The plan often furnishes the proof of the terms on which sales were made, but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan." In *Summers v. Beeler,* 90 Md. 484, Judge Pearce, after quoting the above language, says: "It is manifest from this language that the Pennsylvania court is in full accord with the English chancery court in holding that the question is one of fact to be determined by the intention of the vendor and of the purchasers, and that it is to be determined upon the same rules of evidence as other questions of intentions. In the Penn-

sylvania case there were but two lots under consideration, and the intention of the parties was as clearly shown by the one deed imposing restrictions upon one lot for the benefit of the other, retained by the vendor, as it could have been by a plan describing the two lots, and detailing the conditions to be imposed on one for the benefit of the other."

It is true that many of these cases arise where general plans or schemes of development are involved, but the principle applied by courts of equity is not made to depend upon the existence of any such plan or scheme, but rather upon the question of whether it was the intention of the parties to the instrument, in which the restrictive covenant is contained, to make the covenant applicable to the particular lot or land owned by the complainant in the suit under consideration. As a result of the examination of the many cases involving this question, and the reasons which the courts have assigned for reaching their conclusions, we are of the opinion that the application for relief in such cases is addressed largely to the conscience of the court and is governed by equitable principles; that if the language of the covenant, the respective positions of the parties, and the surrounding circumstances, taken singly or together, show that the covenant was entered into for the benefit of the land retained by the covenantee, creating an equity or right appurtenant to the land, to be exercised by such person as for the time being is the owner thereof, it will be enforced, without regard to whether the covenant does or does not run with the land, or whether or not it is a general scheme or plan of development of the property in question.

Applying these principles to the case now before us, we find that at the time of the deed from Valentine to Clem, in which the restrictive covenant is contained, Valentine was about to engage in the mercantile business on the Thompson lot, upon which he had erected a dwelling-house and store-house at a cost of from $14,000 to $16,000; that for at least a period of nine years prior to the conveyance to Clem there had been but one general mercantile establishment in the village of Rocky Ridge; and that the purpose which the

grantor had in mind was to incorporate such restrictions in the deed to Clem as would prevent the conducting of a mercantile business on his lot, thereby inuring to the benefit of the Thompson lot, then retained by Valentine. This is clearly indicated by the testimony contained in the record and by the undisputed fact that Clem bought the property for less than its market value because of the restriction in the deed, and the further fact that he understood its provisions, because of his not attemping to operate a mercantile business for about six years after obtaining his deed. The record further discloses that, at the time of the sale to Mrs. Thompson, she and her husband were made acquainted with the provisions of the restrictive covenant in Clem's deed, and the inescapable inference is that the restriction against Clem's engaging in the mercantile business was held out as an inducement to Mrs. Thompson to buy the property. An equally strong presumption is that the price which she was willing to give, and which Valentine received, was enlarged by her knowledge of the existence of such a restriction in Clem's deed. The whole record convinces us that the purpose of Valentine and the intention of the parties to the Clem deed was to benefit the land now owned by Mrs. Thompson; and if this intention can be gathered from the surrounding circumstances, it creates in a court of equity a right, equity, or negative easement appurtenant to the Thompson lot, which Mrs. Thompson, as the subsequent grantee of Valentine and the now owner, can have enforced as fully and to the same extent as if the covenant itself, by its terms, was made to apply to Valentine and his assigns.

This case would have to be affirmed without regard to the question of whether Mrs. Thompson was entitled to enforce the provisions of the restrictive covenant, for the reason that Ellsworth C. Valentine and Dessie M. Valentine are parties complainant, and they are parties to the original instrument as well as retaining a lot sixty feet wide, of the depth of one acre, of the land held at the time the Clem deed was given. We have preferred, however, not to rest our decision

on Mr. and Mrs. Valentine's claim alone, for the reason that we are convinced that Mrs. Thompson, the owner of the lot which all the evidence shows it was the intention to benefit by the restrictive covenant, is also entitled to maintain this action, and therefore entitled to the injunction prayed for in the bill. It follows that there was no error in the order of the lower court, and the same will be affirmed.

*Order affirmed, with costs to the appellees.*