FRANK M. KLEIS ET AL. *v.* MOSES KATCEF.
[No. 18, January Term, 1931.]

*Decided Aprli 24th, 1931.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward L. Ward* and *Ridgely P. Melvin,* for the appellants.

*Nicholas H. Green,* for the appellee.

Sloan, J., delivered the opinion of the Court.

Charles F. Lee and James J. Stehle, who were in the real estate business at Annapolis, purchased from James M. Munroe, by deed dated June 3rd, 1919, a parcel of land fronting about 240 feet on the north side of West Street in Annapolis, running north about 200 feet, and then to the west about 500 feet, where it came to a dead end. Through the center they ran a 30-foot street with 6-foot sidewalks and an 18-foot driveway. The tract is divided into thirty lots, four of them fronting on West Street and twenty-six on Munroe Court, the name given to the subdivision. Two of the lots, Nos. 2 and 33, are at the intersection of West Street and Munroe Court, and two, Nos. 1 and 32, front only on West Street.

By deed dated June 10th, 1921, Lee and Stehle conveyed to Moses Katcef, appellee, and Sarah his wife, since deceased, a parcel of land at the southeast corner of the property, fronting 30 feet on West Street and running north 100 feet; that is, a strip 30 by 70 from lot 34 and 30 feet off the rear or east end of lot 32, making a lot 30 by 100, on which Katcef erected a frame dwelling house which set back 20 feet from West Street. The parcel was sold free of restrictions, but the setback becomes important later on.

By deed dated July 25th, 1921, Lee and Stehle undertook to convey lot 33, and the parts of lot 32 and 34 not previously conveyed, to Katcef, so that the latter then owned the whole of the three lots. This deed recites:

"That the said lot of ground is granted and conveyed subject to the following conditions and restrictions:

"1st. That no spirituous or fermented liquors shall be made or sold upon the said ground or buildings to be erected thereon, the same to be used for residence purposes only.

"2nd. That said lot shall never be conveyed, leased or rented to any negro or persons of African descent.

"3rd. That no dwelling or other building, including porches, shall be erected upon said lot or ground within twenty feet from the building line.

"4th. That no dwelling shall be erected on said lot of ground under the cost of thirty-five hundred dollars ($3,500.00) and no double dwelling or wooden fence shall be erected thereon.

"5th. And the said parties of the first part for themselves, their heirs and assigns, hereby agree not to sell, convey, lease or rent any of the lots mentioned in the aforesaid sub-division without the conditions and restrictions under which the said lot hereby conveyed is sold except Lots Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22, the dwellings to be erected thereon not to cost under twenty-five hundred dollars ($2,500.00)."

On the same day, July 25th, 1921, Katcef and his wife conveyed the property, described in the deed of that date from Lee and Stehle, to Abraham Greengold and Lily Greengold, his wife, "subject nevertheless to all the conditions and restrictions contained in the deed of the property hereby conveyed from Charles F. Lee et al. to Moses Katcef and wife as above referred to." On September 3rd, 1926, Lee and Stehle, in order to correct an error in the description of the deed of July 25th, 1921, made another deed to the Katcefs, which included all of lots 32, 33, and 34, and which contained the conditions and restrictions already quoted, and thus applied them to the first Katcef deed. By deed dated September 8th, 1926, Katcef and wife again conveyed to Greengold and wife the property intended to be conveyed to them on July 25th, 1921, and again subjected the Greengold lots to the conditions and restrictions of the deeds from Lee and Stehle to the Katcefs. By deed of September 26th, 1926, the Greengolds conveyed to Louis N. Phipps and May E., his wife, and they, by deed of February 15th, 1927, conveyed to Dr. J. Oliver Purvis, both deeds reciting that the conveyances were made subject to the conditions and restrictions of the deed from Katcef and wife to the Greengolds.

By deed of February 5th, 1929, Dr. Purvis conveyed to Frank M. Kleis and Anna L. Kleis, his wife, the appellants, "subject, however, to all the conditions and restrictions set

out in a deed from Moses Katcef and Sarah Katcef, his wife, dated September 8, 1926" (the deed of correction to the Greengolds). The appellants, disregarding the location and use restrictions, obtained from the City of Annapolis a permit to erect a motion picture theater on the land bought from Dr. Purvis, and had excavated the lot to the level of West Street, when they were enjoined on a bill filed by Moses Katcef to enforce the conditions and restrictions contained in the deeds herein mentioned, and it is from a decree making the injunction perpetual that this appeal is taken.

The question for determination, as stated by the appellants, is, "Are these restrictions operative and effective and will a court of equity enforce them *inter sese* upon the application of the appellee against the appellants in connection with lot 31 and that portion of lots 32, 33 and 34 now owned by them?" The appellee contends that the restrictions are enforceable against all owners in the Munroe Court subdivision and between the parties as a right reserved by the appellee for the benefit of the parcel of land retained by him. In effect, the position taken by the appellee is that, if the restrictions cannot be sustained as a development plan, they can be as a burden put on the appellants' property by the appellee for the benefit of the latter's land. That this can be done has long and recently been held by this court. *Thruston v. Minke,* 32 Md. 487; *Halle v. Newbold,* 69 Md. 265, 14 A. 662; *Clem v. Valentine,* 155 Md. 19, 141 A. 710.

The appellants insist that the restrictions are invalid because they do not in terms bind the heirs and assigns of any of the parties to the deeds containing the restrictions (*Dawson v. Western Maryland Ry. Co.,* 107 Md. 70, 68 A. 301), and that because the conditions imposed in the deed to the appellee and his wife did not extend to their assigns and the heirs and assigns of their survivors, the appellee has no enforceable interest or easement in the lot conveyed to the appellants by Dr. Purvis. *Ringgold v. Denhardt,* 136 Md. 136, 110 A. 321. This contention, however, is based on the theory that the conditions and restrictions have been so generally disregarded by Lee and Stehle and their grantees that

they are to be treated as abandoned, and therefore not enforceable by any of the present owners of lots in the subdivision.

As stated in *Bealmear v. Tippett,* 145 Md. 568, 571, 125 A. 806, 807: "The essential inquiry is whether there is any existing interest on behalf of which the restrictive covenants we have mentioned can be enforced in regard to the property with which we are concerned in this case. In order to answer that inquiry in the affirmative we should have to discover in the terms of the deeds, or in satisfactory proof of a uniform plan of development, an intention that the covenants should bind all portions of the land." In *Wood v. Stehrer,* 119 Md. 143, 86 A. 128, 129 (followed in *Ringgold v. Denhardt,* 136 Md. 136, 110 A. 321), Wood's grantors conveyed to him a lot 50 by 190 feet, in which his deed contained the covenant that "no dwelling house shall be erected or permitted to be erected by himself, his heirs or assigns, at a cost less than $2,500.00; that no building shall be erected within thirty-five feet of the building line," etc. The grantors, Roth and Simon, covenanted "that they will not grant, convey, assign or lease any of the ground they now own or shall hereafter acquire in the same locality * * * to anyone except under and subject to the aforesaid restrictions, conditions and limitations," but they did not require their heirs and assigns to do likewise. Later they conveyed to Stehrer, without restrictions, a lot 150 by 190, adjoining the Wood lot. Wood sought a decree to restrain Stehrer from erecting or locating buildings on his lot which did not comply with the restrictions contained in his (Wood's) deed. In the opinion denying Wood's contention, this court said (page 148 of 119 Md., 86 A. 128, 130): "The covenant does not provide that the grantors will use or hold the remainder of the property subject to the same restrictions imposed on the lot conveyed to the appellant. There is nothing in it which would have prohibited the grantors from erecting such improvements as Stehrer was about to erect. If it was intended to attach to the land remaining in the grantors the restrictions, conditions, and limitations imposed on the lot conveyed to appel-

lant (Wood), surely it would have been so stated; but they only covenanted that 'they will not grant, convey, assign, or lease any of the grounds,' etc.; except under and subject to the aforesaid restrictions, etc. As the covenant does not attempt to regulate the use of the remaining property by the grantors, and does not bind or refer to their heirs and assigns, it is not to be presumed that it was intended to include them."

In distinguishing the covenant in that case from the one in *Lowes v. Carter,* 124 Md. 678, 93 A. 216, 217, where, after sales had been made with restrictions, seventeen lots had been mortgaged without restrictions, this court said: "The language of the covenant we are now considering admits of no doubt that it was intended to bind the reserved land of the grantor, not only while he held the title, but also after it had passed from his ownership. It was declared that 'each and every one of the lots' should be 'subject to all of the restrictions,' 'whether the said lots be sold or retained' by the grantor."

In the instant case Lee and Stehle covenanted in twenty-three of their deeds "for themselves, their heirs and assigns * * * not to sell, convey, lease or rent any of the lots mentioned in the aforesaid subdivision without the conditions and restrictions under which the said lot is hereby conveyed is sold except" that on lots Nos. 9 to 22, inclusive, no buildings to cost less than $2,500 should be erected. They did not (compare *Wood v. Stehrer,* 119 Md. 143, 86 A. 128; *Lowes v. Carter,* 124 Md. 678, 93 A. 216; and *Ringgold v. Denhardt,* 136 Md. 136, 110 A. 321) insert a covenant that the unsold or retained lots should be subject to the same restrictions, but they did as a fact sell all of the lots with the restrictions appearing in the deeds for twenty-three lots. The six deeds conveying the seven remaining lots were without restrictions, but Mr. Lee testified that the sales contracts contained all the restrictions, so that the original purchasers had actual notice of the plans under which the subdivision was to be improved and developed. In this case we have a deed from Lee and Stehle to the Katcefs for the three lots on which there are imposed all of the restrictions, and the

Katcefs passed along the same restrictions in their deed to the Greengolds, and thence by mesne conveyances to the appellants, subject, by reference, to the conditions of the deed from Lee and Stehle (*Phelps v. Phelps,* 17 Md. 120; 18 *C. J.* 184), so that the appellants not only had constructive but actual notice of the conditions and restrictions under which the lots they now own were sold by Lee and Stehle (*Lowes v. Carter,* 124 Md. 678, 685, 686, 93 A. 216).

Mr. Tiffany, in *Outlines of Real Property,* 358, says: "The notice to a purchaser necessary to render the agreement enforceable against him in equity * * * may be either actual or constructive. He is, it seems, charged with notice of anything showing or imposing such a restriction which may be contained in a conveyance in the chain of title under which he claims." In the oft-cited case of *Clark v. Martin,* 49 Pa. 289, it is said: "The plan often furnishes the proof of the terms on which sales were made; but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan." Of which it was said by this court in *Summers v. Beeler,* 90 Md. 474, 484, 45 A. 19, 22: "It is manifest from this language that the Pennsylvania court is in full accord with the English chancery court in holding that the question is one of fact to be determined by the intention of the vendor and of the purchasers, and that it is to be determined upon the same rules of evidence as other questions of intention." *Lowes v. Carter,* 124 Md. 678, 683, 93 A. 216; *Clem v. Valentine,* 155 Md. 19, 27, 141 A. 710. In all of the deeds here in evidence reference is made to a plat recorded in the clerk's office at Annapolis, but that plat, also in evidence, does not have indicated thereon a building line, which has often been held to be sufficient evidence of an intention to impose a building line restriction. *Ringgold v. Denhardt,* 136 Md. 136, 149, 110 A. 321; notes, 21 *A. L. R.* 1281, and 57 *A. L. R.* 311.

Mr. Lee testified that "the property was not suitable at that time for business purposes and we made an effort first to sell it without restrictions, but the people wanted it for residential purposes and for that reason those restrictions

were placed on the property." On the lots the deeds for which contained no restrictions, the houses were set back from 11.6 feet to 27.15 feet; the latter being on lot 31, now owned by the appellants. Eleven houses were set back more than 20 feet from the street line, one, the appellee's, 19.9 feet, five from 15 to 18½ feet, twelve from 12 to 14 feet, and one 2 feet; the last mentioned being located on a circle 75 feet in diameter which cut into the lots at that end of the court 30 feet. It will thus be seen that the buildings erected on the lots have not been located in accordance with the building line restriction, and none of the owners have objected to the erection of any of the dwelling houses as located. With the exception of the erection of one double house in the subdivision, all other restrictions have been observed. So far then, as the building line provision is concerned, it cannot be applied *inter sese* among the lot owners, but it is otherwise as to the other restrictions, which have been, until the present instance, respected.

But the decision in this case is not dependent on the building plan of the whole subdivision and of every lot therein. It has been decided in this court (*Thruston v. Minke*, 32 Md. 487; *Halle v. Newbold*, 69 Md. 265,, 14 A. 662; *Newbold v. Peabody Heights Co.*, 70 Md. 493, 17 A. 372, 3 L. R. A. 579) that a vendor may impose conditions and restrictions on land which he sells for the benefit and advantage of land retained by him, and in the recent case of *Clem v. Valentine*, 155 Md. 19, 141 A. 710, 711, the principle was applied in favor of a grantee of one who had sold a lot with the condition imposed that the appellant should not use the property "for the purpose of conducting therein or thereon a general merchandise store or business and that no building to be erected on said land shall be used otherwise than as a private dwelling house or garage. * * * The aforegoing covenant shall apply and bind the grantee, his heirs and assigns." There was no covenant on the part of the grantor which in terms bound his heirs and assigns. Judge Stone, in *Halle v. Newbold*, 69 Md. 265, 14 A. 662, 663, said: "These cases [*Clark v. Martin*, 49 Pa. 289; *Thruston v. Minke*, 32 Md.

487; and *Whitney v. R. R. Co.*, 11 Gray (Mass.) 359] very conclusively settle the law that a grantor may impose a restriction, in the nature of a servitude or easement, upon the land that he sells or leases, for the benefit of the land he still retains; and if that servitude is imposed upon the heirs and assigns of the grantee, and in favor of the heirs and assigns of the grantor, it may be enforced by the assignee of the grantor against the assignee (with notice) of the grantee." Then the opinion by Judge Digges in *Clem v. Valentine*, 155 Md. 19, 27, 141 A. 710, 713, adds: "It is to be noted that that case was one in which the covenant expressly provided that its terms should be binding on the assigns of both the covenantor and covanantee, and it was there held that this enabled an assignee of a covenantee to enforce the restriction; but it does not decide that a covenant which does not, in terms, make it apply to the assignee of the covenantee, could not be enforced by such grantee, if it be clearly shown that the covenant was made for the benefit of the land owned by him and created a right or equity appurtenant thereto. In the one case the language of the covenant itself was all that was necessary to show the intention of the parties; but it does not follow that this intention cannot be shown otherwise."

. The appellee bought parts of lots 32 and 33, fronting 30 feet on West Street, on which he erected a dwelling house which met the conditions applied to the subdivision. He later bought lot 34 and parts of lots 32 and 33 with the restrictions, so that he then owned the three lots; these parcels making one lot fronting 74 feet on West Street and 100 feet on Munroe Court. Later Katcef took from Lee and Stehle a deed of correction which imposed all the restrictions on the lot he retained and still owns, as well as on the adjoining lands now owned by the appellants. The situation was disclosed in every deed from Lee and Stehle down to the appellants. The appellants' deed advised them that the property they purchased could only be used for residential purposes. In inserting these provisions, the appellee was protecting his residence against the erection of a business or commercial

building next door. Such motives have been expressly upheld by this court. *Peabody Heights Co. v. Wilson,* 82 Md. 186, 32 A. 386, 1077. In the leading case of *Tulk v. Moxhay* (1848), 2 Ph. 777, 41 Eng. Reprint, 1143, quoted by Judge Alvey at considerable length in *Newbold v. Peabody Heights Co.,* 70 Md. 493, 17 A. 372, Lord Cottenham said: "That this court has jurisdiction to enforce a contract between the owner of land and his neighbor purchasing a part of it that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed."

In *Clark v. Martin,* 49 Pa. 289, it was said: "It was objected at the argument that this remedy applies only as a means of compelling an observance of the terms involved in a general plan of lots; and this element actually exists in about half of the cases just cited; yet they are not decided on that consideration. It is not because a plan is deranged that the court interferes, but because rights are invaded, or about to be; and this fact may exist in a plan of two lots, as well as in one of two hundred." *Clem v. Valentine,* 155 Md. 19, 27, 141 A. 710.

Without further prolonging this opinion, we think we have shown sufficient reasons for saying the appellants acquired their property through the appellee charged with the restrictions imposed by him, which are contained in his deed from Lee and Stehle, and that the injunction against the erection of a theater by the appellants was properly granted.

*Decree affirmed, with costs.*