JOSEPH BARTELL et al. *v.* FRANK SENGER et al.
[No. 4, April Term, 1931.]

*Decided June 9th, 1931.*

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Louis J. Jira,* with whom were *Dobihal & Novak* on the brief, for the appellants.

*John J. Neubauer,* with whom were *Frank J. Pintner* and *Evan D. Llewelyn* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The appellants own and occupy leasehold property known as 3325 East Monument Street in Baltimore City, and the

appellees own and occupy the adjoining property, also leasehold, known as 3323 East Monument Street. Each lot is improved by a two-story brick dwelling, which is one of a solid block of houses, all of which are substantially alike in appearance, and each of which has a porch extending across its entire front. Each of these porches is apparently partly inclosed by a brick parapet or wall extending from the surface of the ground a short distance above the porch floor, and the roof of each is supported by a pillar at each of its two corners nearest the street.

Prior to this suit Frank Senger and Marie Senger, his wife, the appellees, undertook to inclose the open space between the brick wall and the roof of their porch with removable glazed casements, bronze screens, and a "single light screen door."

To prevent the proposed change, Joseph Bartell and Bessie Bartell, his wife, the appellants, filed the bill of complaint in this case, in which they charged that it violated certain "covenants, conditions and restrictions" in an agreement contained in a lease, hereinafter referred to as the Cadden lease, from the Columbia Building Company to James R. Cadden, dated April 5th, 1926, and in which they prayed that the appellees be enjoined from altering the "architectural design of the said porch," and that a mandatory injunction be issued commanding them to restore the porch to its "original condition." Appellants further stated that they acquired their property from Frank Novak June 29th, 1928, that the appellees acquired their property from Edward W. Auld February 13th, 1928, that both properties "adjoin each other and that both were originally when erected by the same builder, of the same architectural design," but there is nothing stated in the bill to indicate when or how Novak or Auld acquired title to the property, or that there was any privity between them and either the Columbia Building Company or Cadden. The part of the lease to Cadden invoked by the appellants is as follows: "The aforegoing lease is made and accepted between the parties hereto upon the following conditions which conditions are to run with the land and are

made a part of the consideration of these leases, to wit, 1. The said lessee for himself, his executors, administrators and assigns, covenants that the houses erected on the above described lots of ground shall not be used as stores for the sale of any kind of intoxicating liquor of any sort nor are said houses to be converted into stores. This covenant is not to apply to No. 3321 Monument Street, being the fourth above described lot as the said lot is already improved by a store. 2. That the porches on the houses erected on said lots shall remain as they are for the period of ten years from the date hereof, and no architectural change shall be made therein nor shall the same be changed in any particular; this covenant, however, not to include painting or screens used for the purpose of excluding the sun or mosquitoes from said porches."

A demurrer to the bill having been overruled, and a demurrer to defendants' answer having been sustained, defendants finally filed an amended answer, in which, while declining to admit that the "restrictions or covenants" were enforceable, they denied that, if enforceable, they would be violated by the proposed improvement. Testimony was taken mainly in connection with the latter issue, and at the close of the case the chancellor dismissed the bill on the ground that the "enclosure" violated neither the "letter or spirit of the covenant."

This appeal from that decree presents two questions: (1) Whether the appellants have the right to enforce the so-called covenants or conditions in a court of equity; and (2) if they have, will the proposed improvement violate the agreement that the porches shall for ten years "remain as they are * * * and no architectural change shall be made therein nor shall the same be changed in any particular; this covenant, however, not to include painting or screens used for the purpose of excluding the sun or mosquitoes from said porches"?

It appears from an examination of it that, in that part of the Cadden lease which refers to the use of the leased property, the restrictions are indifferently described as "conditions" and as "covenants," as though the two terms were synonymous. But that is not so, for a covenant "differs from

a condition, both in the language that constitutes it, and in the consequences which follow from a breach. For while the breach of a covenant merely gives the covenantee the right to maintain a personal action, the breach of a condition works or may work a forfeiture of the estate." *Venable's Syllabus*, 106.

The ambiguous and obscure character of the language in which the stipulation is stated, considered in connection with its subject-matter, forbids the inference that it was intended to operate as a technical condition. The stipulation necessarily related to future acts, and if a condition at all was a condition subsequent. But such conditions "are not favored in law," and are strictly construed. *Venable's Syllabus*, 108. And where the very language out of which they are said to arise itself raises a doubt as to whether the parties intended them to operate as "conditions," or as "covenants," it will be assumed that their intention was to create a covenant rather than a condition. *Id.; Foreman v. Sadler's Ex'rs*, 114 Md. 577, 80 A. 298.

But while the effect of the stipulation does not annex a condition to their title to the property, it may nevertheless constitute such an agreement as a court of equity will enforce in a suit between the original parties, or, where the deed containing the agreement expressly states that it is made for the benefit of the heirs and assigns of the grantee or lessee, in a suit *inter sese* between them. *Thruston v. Minke*, 32 Md. 494; *Halle v. Newbold*, 69 Md. 269, 14 A. 662; *Newbold v. Peabody Heights Co.*, 70 Md. 500, 17 A. 372; *Wood v. Stehrer*, 119 Md. 143, 86 A. 128; *Jones v. Real Estate Company*, 149 Md. 271, 131 A. 446; *Clem v. Valentine*, 155 Md. 19, 141 A. 710. But where it does not appear from the express terms of the deed that it was made for and on behalf of the assigns of the lessee or grantee for their benefit, it cannot be enforced in a suit *inter sese* between them, unless it appears that the restrictions were an integral part of some scheme or plan for the uniform development or use of the land described in the deed, and that it was the intention of the parties thereto to bind "all por-

tions of the land" (*Bealmear v. Tippett,* 145 Md. 571, 125 A. 806, 807), or that they were "meant for the common advantage of a set of purchasers" (*Boyd v. Park Realty Corp.,* 137 Md. 41, 111 A. 129, 130; *Nottingham Brick & Tile Company v. Butler,* 15 Q. B. Div. 268; *Beetem v. Garrison,* 129 Md. 665, 99 A. 897; *Foreman v. Sadler's Ex'rs.,* 114 Md. 577, 80 A. 298), and that the parties to the suit derived their title from a common vendor who imposed the restrictions upon the land affected (*Ringgold v. Denhardt,* 136 Md. 142, 110 A. 321; *Dawson v. Western Md. R. Co.,* 107 Md. 74, 68 A. 301), and that the defendant took with notice.

In determining whether the language employed in the stipulation is sufficient to establish such an agreement, it should be so construed as to give effect to the intention of the parties, where that intention can be ascertained with reasonable certainty. *Thruston v. Minke, supra; Ringgold v. Denhardt, supra; Foreman v. Sadler's Ex'rs., supra; Newbold v. Peabody Heights Company, supra; Tulk v. Moxhay,* 2 Phill. 774; *Clem v. Valentine,* 155 Md. 26, 141 A. 710, 712.

From those cases, and especially from the following statement in *Clem v. Valentine,* that "it seems to be well settled by the weight of authority that any grantee of the land to which such a right is appurtenant acquires by his grant a right to have the servitude, or easement, or right of amenity, protected in equity, notwithstanding that his right may not rest on the covenant, which simply runs with the title to his land, and notwithstanding that it may also be true that he may not be able to maintain an action at law for the vindication of his right. Nor is it necessary, in order to sustain the action, that there should be privity of estate or contract, but there must be found somewhere the clear intent to establish the restriction for the benefit of the party attempting to restrain its infringement," it is apparent that in such a proceeding as this all technical considerations, whatever may be their nature, are subordinate to the intention of the parties. And if it be clear that it was the intention of the common vendor of different parcels of a tract of land sold

to different vendees to impose restrictions limiting its use for their common benefit, and they purchased with knowledge of the intent and the purpose, equity will compel such vendees to observe the restrictions.

Turning to the agreement dealing with the restrictions as found in the lease from the Columbia Building Company to Cadden, it is found that it is separable into three parts—a preamble, clause one, and clause two. The preamble applies to and modifies both clauses, but except for that the two clauses are unrelated and independent, and neither is affected by the terms of the other. So read, clause 2, in issue in this case, would be: "The aforegoing lease is made and accepted between the parties hereto upon the following conditions which conditions are to run with the land and are made part of the consideration of these lease to wit * * * That the porches on the houses," and so forth. There is in that language no reference in terms to the assigns of either the grantor or the grantee, nor is there anything in the lease itself to indicate that the restriction was for the benefit of the assignees of Cadden, the lessee, unless the phrase "which conditions are to run with the land" is to be given that effect. The fact that the so-called "conditions" were a part of the consideration for the lease is not material, for the lessor alone was interested in the consideration (*Dawson v. Western Md. R. Co., supra*), the restrictions did not constitute a condition subsequent (*Foreman v. Sadler's Ex'rs., supra*), nor does it certainly appear that there is any privity either of estate or contract between the parties to this proceeding, and while they took from a common vendor, that vendor did not himself impose the restrictions on the property. Upon these facts the appellants have no standing in a court of equity to enforce the restriction, unless it appears with reasonable certainty that it was the intention of the common vendor of the properties respectively owned by the parties to this proceeding that the restrictions stated in clause 2 of the agreement should be annexed to and bind the several properties described in the lease to Cadden, for the benefit of the respective owners thereof, as a part of a scheme or plan designed

to preserve uniformity in the appearance of the houses on the demised land, and unless the appellees took with notice of that intention and plan. *Supra.* But the record fails to disclose any such intent. Neither in the pleadings nor in the evidence does it appear, except inferentially, that there was any privity of title between either the appellants or the appellees and Cadden or the Columbia Building Company. Nor does it appear whether the Columbia Building Company did or did not, at the time the lease was made, own any contiguous land which could be affected by the restrictions, or whether the present owners of the property knew of such restrictions and purchased with reference to them. So that, upon the face of the present record, it cannot be said that the phrase "running with the land," as used in the preamble to the agreement, was intended for the benefit of the lessor, the Columbia Building Company, or for the benefit of persons to whom Cadden might assign his interests in the lots. Nor does it appear from any other source that the restriction stipulated in clause 2 of the agreement was part of a plan to preserve uniformity in the appearance of the houses on the land described in the Cadden lease, or that it was intended for the common benefit of persons purchasing them mediately or immediately from Cadden. There are, it is true, some facts tending to support such inferences, but the inferences would necessarily be conjectural, and would lack the certainty which they should have to constitute the basis of a judicial finding, and in view of that uncertainty the relief prayed by the appellants was properly refused. But inasmuch as these defects in the pleadings and the proof might be corrected by amendment or further evidence, the second question raised by the appeal, whether the proposed improvement violates the restriction, will also be considered.

The second clause of the agreement states that for ten years the porches on the houses described in the lease, shall (a) "remain as they are," (b) no architectural change shall be made therein, and (c) the same "shall not be changed in any particular." But it then provides that that language is not to prevent "painting or screens used for the purpose of

excluding the sun or mosquitoes from said porches." The appellees propose to inclose the space between the brick parapet or wall partly inclosing their porch and the roof thereof by glazed casements and wire screens, and the question is whether such an improvement (a) changes the porch "in any particular," and (b) if it does, whether the change is within the exception. Without laboring the point, it is sufficient to say that the proposed improvement would effect at least some change in the porch and would be obnoxious to the primary prohibition of the agreement. Whether it is permitted by the exception is a more doubtful and difficult question, which reduced to its simplest terms is whether a removable glazed casement can be accepted as a "screen" to exclude the "sun or mosquitoes." In approaching that question, it may be said that, where the language employed to express a restrictive covenant so far involves a doubt as to require construction, the rule is that such covenants are to "be strictly construed against the person seeking to enforce them," and that "all doubts must be resolved in favor of natural rights and a free use of the property." 18 C. J. 387. The language of the exception is wholly inconsistent with the language of the primary prohibition of the agreement, and they cannot be well construed together. The primary prohibition forbids any change whatever in the porches, the exception permits them to be inclosed by screens, and while it is contended that, in construing the word "screens," as used in the exception, regard must be had to the prohibition against "architectural change," it is not apparent how that contention supports their position that a glazed casement is not a screen, because the use of a metal screen would effect quite as much of a change in the architectural design of the porch as the use of glass. And so far as any intent at all appears from the language of the clause, it is that the use and purpose of the screen are to determine whether it is permitted by the exception, rather than the material of which it is composed, so long as it effects no change in the character of the structure as a porch, and so long as the use of the material to which appellants object would make no greater difference in

the general appearance of the porch than the use of the material which they concede may be used.

A "screen," as defined by the lexicographers, is usually accepted as meaning a contrivance, which may be made of any material suitable for the purpose, used as a protection against heat or drafts or light or insects. The material of which it is composed may be fabric, paper, metal, glass, wood, leather, or indeed any substance which will afford the desired protection. The appellees apparently contend that its meaning is limited to the wire mesh screening commonly employed as protection against insects. Such a construction is narrower than the literal meaning of the word, and is based upon an assumed colloquial association of the word "screen" with wire mesh. But there is no evidence to show that the parties used the word in that sense, or they intended it to convey any meaning other than that given by the lexicographers, and to give it a narrower meaning would be to construe the agreement, not in favor of the appellees, as the rule requires, but against them. The exception necessarily contemplated that the whole porch would be inclosed, for nothing less would afford protection against insects. Its purpose was not apparently to insure the free passage of air, for any substance sufficiently opaque to protect against sunlight would also prevent the free passage of air; nor was it intended to protect the view of adjacent properties, for whatever obstructed the sunlight would also obstruct that. Giving these factors their natural weight, and giving effect to the rule of construction to which we have referred, it cannot be said that the use of glass instead of metal, paper, or some other substance, in so screening the porch as to exclude insects, is such a violation of the agreement as would justify the intervention of a court of equity. It follows, therefore, that we concur in the conclusions of the trial court, and we will affirm the decree from which this appeal was taken.

*Decree affirmed, with costs.*