ROGERS ET UX. *v.* STATE ROADS COMMISSION OF MARYLAND

[No. 132, September Term, 1961.]

*Decided February 20, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*John D. Gilmore, Jr.,* with whom were *Nylen, Gilmore & Simpson* and *Leo Wm. Dunn, Jr.,* on the brief, for appellants.

*T. Thornton Murray, Special Attorney,* with whom were

*Thomas B. Finan, Attorney General,* and *Joseph D. Buscher, Special Assistant Attorney General,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant landowners, James W. Rogers and wife, appeal from a judgment in their favor for $3,000 for the taking of 1.46 acres of land abutting on Route 202 in Prince George's County. The judgment was entered upon the inquisition of a jury in a condemnation suit brought in 1960 by the appellee, the State Roads Commission (the Commission).

A tract of about 4½ acres, apparently acquired by the Commission in or before 1945, in connection with the improvement of Route 202, was sold by the Commission to the Rogers in 1952 after negotiations extending over seven years. The deed from the Commission to the Rogers was executed by both the grantor and the grantees and contained this clause:

> "Subject to the conditions and restrictions that no part of the property hereby conveyed shall ever be used for any commercial purposes whatsoever, this covenant to run with and bind the land hereby conveyed and shall bind the grantees herein, their heirs and assigns, forever."

The land here involved is a part of the above 4½ acre tract. About .90 acre is being taken in fee and .56 acre for easements. The Commission had reserved an easement in about ½ acre of the portion being taken in fee, and the fee therein subject to that easement had little or no value.

Evidence was introduced to show that the land in the neighborhood of the tract in question was residential when the Rogers acquired it in 1952, but that since then property across the road had become commercial in use and some adjacent land had been rezoned as light industrial and had been sold. It was also shown that other nearby land was zoned for industrial or commercial use; and there was testimony that the highest and best use of the land was for light industrial purposes. Its value for such use was greater than its value for residential purposes. After the institution of this suit the son

of the owners applied for a rezoning of the property and the Maryland-National Capital Park and Planning Commission recommended that it be reclassified for light industrial use.

In giving his instructions, the court read the above quoted restriction and told the jury that it was "a valid, subsisting covenant running with the land and binding on the land at the date of the taking, and therefore your consideration of value must take into consideration that restrictive covenant. And in determining its highest utility you must not consider any use other than residential use, although you are not restricted to the existing zoning that it was, rural residential, at the time. You may consider, based on evidence * * * that it might be feasible to zone the property to a more intensive residential use * * *. But you may not consider an industrial or commercial potential because that is forbidden under the restrictive covenant which the Court instructs you was valid and binding at the date of the taking."

The appellants excepted to the instruction that the restrictive covenant pertaining to commercial use was valid and subsisting, and asked the court "to instruct the jury to the effect that such covenant is no longer valid and subsisting by reason of the substantial change and deterioration in the character of the surrounding neighborhood, and to instruct the jury that they can find in light of such change that the property could be used for an industrial or commercial purpose." The appellants' contention in this court would seem to shift the determination of the enforceability of the restriction from the judge to the jury. They say in their brief that "the lower Court should have instructed the Jury that a substantial change in the surrounding area is a basis to have a restrictive covenant declared null and void and if they find that such a change has taken place, then, in that event the covenant would not be binding."

Under either form of their contention the appellants apparently at least tacitly concede that if the restrictive covenant remained valid and enforceable without any prospect of becoming unenforceable in the immediate or near future, it would affect the value of the land and hence the damages for its taking.

There need not be any general plan of development in order to make a restrictive covenant enforceable if it is imposed by a grantor on a single tract conveyed by him for the benefit of adjacent property retained by him. *Thruston v. Minke,* 32 Md. 487; *Clem v. Valentine,* 155 Md. 19, 141 A. 710; *Kleis v. Katcef,* 160 Md. 627, 634, 154 A. 558. Since the party here interested in the enforcement of the restriction is the original grantor, we need not pause to consider its enforceability by a transferee of the original grantor. Likewise, since the parties against whom it is sought to be held enforceable are the original grantees, its enforceability against a transferee of the original grantees seems material only insofar as it might bear upon the saleability of the property by the original grantees. The restriction would, we think, be enforceable, whether or not it constituted a covenant running with the land, not only against the original grantees, but also against their assignees with notice. *Thruston v. Minke, supra; Newbold v. Peabody Heights Co.,* 70 Md. 493, 17 A. 372; *Raney v. Tompkins,* 197 Md. 98, 102, 78 A. 2d 183. See also *Club Manor, Inc. v. Oheb Shalom Cong.,* 211 Md. 465, 475, 128 A. 2d 405.

There are a number of cases in which it has been held that by reason of a change in conditions the purpose of a restriction cannot be accomplished and the restriction ceases to be enforceable. See such cases as *Gulf Oil Corp. v. Levy,* 181 Md. 488, 30 A. 2d 740; *Norris v. Williams,* 189 Md. 73, 54 A. 2d 331; *Needle v. Clifton Realty Corp.,* 195 Md. 553, 73 A. 2d 895. See also *Texas Co. v. Harker,* 212 Md. 188, 129 A. 2d 384, where the rule was recognized, but no sufficient change was shown to call for its application. The rule was also stated and a number of cases in support of it were cited in *American Weekly, Inc. v. Patterson,* 179 Md. 109, at 115, 16 A. 2d 912, a case involving a restrictive covenant not pertaining to land.

One seeking to enforce a restriction in equity must have a standing entitling him to seek equitable relief. *Foreman v. Sadler's Executors,* 114 Md. 574, 80 A. 298, (retained ownership of a strip of land only inconsequentially affected held not sufficient); *Boyd v. Park Realty Corp.,* 137 Md. 36, 111 A. 129; *Bealmear v. Tippett,* 145 Md. 568, 125 A. 806; *Adams v. Plaza Const. Co.,* 157 Md. 674, 145 A. 483. Continued own-

ership by the original grantor of land benefited by the covenant in the vicinity of the land subjected to the restriction is enough to entitle the grantor, as the original covenantee, to enforce the restriction. *Clem v. Valentine, supra; Coomes v. Aero Theatre & Shopping Center, Inc.*, 207 Md. 432, 114 A. 2d 631. See also a statement to like effect in *Club Manor, Inc. v. Oheb Shalom Cong., supra,* 211 Md. at 475. A covenant to prevent competition between a business on land granted and a business on land retained, or vice versa, has been held enforceable under this rule in *Clem v. Valentine, Coomes v. Aero Theatre & Shopping Center, Inc.*, and *Raney v. Tompkins,* all previously cited. A similar result was reached in *Newton-Abbot Co-op. Soc. Ld. v. Williamson & Threadgold Ld.,* [1952] Ch. 286. There a covenant against competition in a certain business was upheld in favor of the devisee and legatee of the original grantor, even though the land for the benefit of which the restriction was imposed was not identified in the deed conveying the land subjected to the restriction. It was, however, otherwise identified by the evidence.

In *Clem v. Valentine, supra,* the original grantors had sold that part of the lot on which they had located the store which was sought to be protected against competition from a like business on the lot sold. This court, in affirming the decree of the trial court, held that the grantee of the part of the lot containing the store was entitled to enforce the covenant, but the court also went on to say (155 Md. at 29-30) : "This case would have to be affirmed without regard to the question of whether Mrs. Thompson [the grantee of the protected store property] was entitled to enforce the provisions of the restrictive covenant, for the reason that Ellsworth C. Valentine and Dessie M. Valentine [the grantors of the property sold subject to the restriction] are parties complainant, and they are parties to the original instrument as well as retaining a lot sixty feet wide, of the depth of [the] one acre [lot], of the land held at the time the Clem deed was given. We have preferred, however, not to rest our decision on Mr. and Mrs. Valentine's claim *alone,* for the reason that we are convinced that Mrs. Thompson, the owner of the lot which all the evidence shows it was the intention to benefit by the restrictive

covenant, is also entitled to maintain this action, and therefore entitled to the injunction prayed for * * *." (Italics supplied.) Cf. *Ringgold v. Denhardt,* 136 Md. 136, at 144, 110 A. 321.

In *Texas Co. v. Harker, supra* (212 Md. at 198) this Court quoted with approval the following statement from Annotation, 4 A.L.R. 2d 1112, 1118-19: "Most jurisdictions now recognize a change in the character of the neighborhood as a ground for affirmative relief against restrictive covenants by way of cancellation or modification where the change has been so radical as to *render perpetuation of the restriction of no substantial benefit to the dominant estate, and to defeat the object or purpose of the restriction.*" (Italics ours.) See also on this subject, particularly with regard to the effect of there being some continuing benefit to the land intended to be benefited thereby, despite changes in the neighborhood, 3 Tiffany, *Real Property* (3rd Ed.), § 875, pp. 520-21 of original text and note 6 thereto (original text and 1961 Cum. Supp.), citing many cases.

The only testimony bearing on the purpose of the restriction in this case is that of Mr. Rogers to the effect that he wanted the property as a buffer strip to protect his residential property against having some objectionable commercial stand in front of his gate. Why the grantees needed such a restriction to protect themselves against an undesirable use of their own property is not explained. The testimony is silent as to the Commission's reasons for wishing to insert such a covenant. Its brief in this court states that this restriction "was put there by the grantor for public safety in that the highway would have fewer commercial entrances in a heavily traveled section." It also seems conceivable that the Commission may have had in mind the possibility of having to reacquire the property at a later date and a consequent desire to restrict it to a use which would be likely to hold down the cost in such an event. Cf. *Congressional School of Aeronautics, Inc. v. State Roads Comm.,* 218 Md. 236, 244-45, 146 A. 2d 558, referring to a policy of the Commission with regard to zoning changes which might affect contemplated highway improvements. We see no reason why such a purpose would have been

improper where the Commission was selling land owned by it. In any event, it seems not only possible but probable that the inclusion of the restriction had a direct bearing on the sale price in 1952.

It is, we think, apparent that the Commission does own land contiguous to the tract condemned, such land being used for highway purposes, but it also seems quite apparent that the Commission had no such interest in preserving the residential character of the tract conveyed to the Rogers as the owner of adjacent residential property would have had. Whatever interest or purpose the Commission may have had in imposing the restriction in 1952, no change therein is shown in 1960, and the Commission's ownership of land (the highway) appears unchanged. That land, we think, constitutes the dominant tenement in favor of which the restriction was imposed on the servient tenement, the land conveyed by the Commission to the Rogers, and we are of the opinion that the Commission's ownership of it was a sufficient basis to entitle it to enforce the covenant. It seems to have been so recognized by the parties when they made their contract. In connection with this matter see a note in 28 Harv. L. Rev. 201-202, criticizing *London County Council v. Allen,* [1914] 3 K. B. 642. In that case the court did not discuss the municipality's ownership of a street as a factor in determining the enforceability of a covenant against obstructing the route of a possible extension of the street in a suit brought by the municipality against a transferee of the covenantor. Perhaps that was because the covenant was held not to be one running with the land. The case was referred to but distinguished in the *Newton-Abbot Co-op.* case above cited, where the covenant did run with the land. The decision in the *Allen* case seems to reflect a partial recession of the English courts from *Tulk v. Moxhay,* 2 Phillips 774. The course of our own decisions has been otherwise and we have adhered to *Tulk v. Moxhay.* See, for example, *Clem v. Valentine,* and *Raney v. Tompkins,* both cited above.

We are of the opinion that the Commission's ownership of the highway constituted ownership of a dominant estate and that whatever benefits accrued to the Commission under the

covenant restricting the use of the property in question to residential purposes, when the parties made their contract in 1952, continued to accrue to the Commission in 1960, when it condemned the property, and further, that any changes which may have occurred in the surrounding neighborhood after 1952 did not deprive this covenant of having any substantial value to the Commission, and hence that the covenant did continue to be valid and enforceable. As we have already held, it would be enforceable against a transferee, with notice, of the original grantees and would therefore be material in determining the value of the property to the traditional willing purchaser. We are accordingly of the opinion that the trial court was correct in instructing the jury that the covenant was in force and that effect had to be given to it in determining the uses for which the land was available.

We have not overlooked the appellants' contention based upon an analogy to zoning cases in which it is held that evidence is admissible of the reasonable probability of a change in zoning classification within a reasonable time. *State Roads Comm. v. Warriner,* 211 Md. 480, 484-485, 128 A. 2d 248. See also as supporting this rule 4 Nichols, *Eminent Domain* (3rd Ed.), § 12.322 and 1 Orgel, *Valuation under Eminent Domain* (2nd Ed.), § 34. In the *Warriner* case, the prospect of early reclassification was present. We find nothing here, however, to indicate any early change bearing upon the benefit to the Commission of the retention of the restriction and hence no indication of any basis for the early termination of the restriction. Therefore, even if we were prepared to treat the prospect of removal of a restrictive covenant on the same basis as the prospect of a change in zoning (and we do not imply any opinion that we would do so), the foundation for applying the supposed analogy is lacking. See also *Pumphrey v. State Roads Comm.,* 175 Md. 498, 506, 2 A. 2d 668, and *Lustine v. State Roads Comm.,* 217 Md. 274, 281-82, 142 A. 2d 566, as to the requirement that immediate or early availability of a use be established, in order that such potential use may be reflected in an award of damages.

We have not discussed in this opinion questions of jurisdiction at law or in equity or questions of practice or pro-

cedure, and we do not find it necessary to do so. We have treated the fundamental question, the enforceability of the covenant—which is a question for determination either in equity or in a court of law in accordance with equitable principles—as properly presented, or as if properly presented, by the appellants, and we have determined it on the basis of the rules of equity.

In view of the conclusion at which we have arrived in this suit between the original parties to the covenant, which we think would also be binding on transferees with actual or constructive notice taking from the covenantors, we think that no extended general discussion of the effect of restrictions would be useful. A number of the comparatively few cases dealing with the subject have involved cases of restricted tenure, as for charitable or religious uses. See 1 Orgel, *op. cit. supra*, § 41, which recognizes that no precise or uniform rule of valuation of property held under restricted tenure can be distilled from the relatively small number of cases found which deal with the question. This observation (at p. 187) seems to have been made with regard to American cases, but a similar one is made as to English cases (p. 188). 4 Nichols, *Eminent Domain* (3rd Ed., 1961 Supp.) § 12.321, quotes at considerable length from *Board of County Com'rs v. Thormyer*, 169 Ohio St. 291, 159 N. E. 2d 612 (1959), further mentioned below. Otherwise, Nichols considers the effect of restrictions mainly on the question of whether those entitled to the benefit of restrictive covenants applicable to land taken by eminent domain are entitled to compensation for their interests. See 2 Nichols, *op. cit. supra*, § 5.73.

In the *Thormyer* case the property condemned was part of a tract which had been conveyed for use as a children's home, with a right of reverter to the grantor and his heirs if the property should cease to be used for that purpose. In an opinion in which Justice Taft spoke for a majority of the Supreme Court of Ohio, it was held that no effect should be given to the restricted tenure under which the land was held, though it was conceded that six out of the seven American cases cited had reached an opposite result. The basis of the *Thormyer* de-

cision was, essentially, that a choice should be made as between the owner and the condemning authority as to which should receive a windfall—the owner by disregarding the restricted tenure, or the condemnor by giving it full effect. (A third possible solution advanced in *Corrie v. McDermott*, [1914] A. C. 1056, was rejected.) Since our case is concerned with a direct controversy between the original parties to the restriction, we think there is no reason for any problem of a choice of rules or of a choice of windfalls to arise. The parties are simply entitled to what they have, respectively, bargained for.

In accordance with the views above expressed, the judgment will be affirmed.

*Judgment affirmed, with costs.*